John J. Keenan SBN 242487
**Warren Law Group**
445 S. Figueroa St.
Los Angeles, CA 90071
866-954-7687 | 866-335-6823
johnkeenan@warren.law

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PREHIRED, LLC, <br><br> Plaintiff, <br><br> v. <br><br> MATTHEW PROVINS, <br><br> Defendant. | Case No.: 2:22-at-231 <br><br> COMPLAINT |

Plaintiff, complaining of Matthew Provins, by and through its attorneys, Warren Law Group, alleges as follows:

## PARTIES

1. Prehired, LLC, is a Delaware Limited Liability Company whose principal place of business located at 8 The Green, Suite 10588, Dover, DE 19901.

2. Upon information and belief, Matthew Provins ("Provins") is an individual who resides in Sacramento County, California.

## JURISDICTION

3. This Court has diversity jurisdiction pursuant to 28 U.S.C. 1332(a)(2) as this is a controversy between a citizen of Delaware and a citizen of California, and the amount in controversy is greater than $75,000.

COMPLAINT - 1

**VENUE**

4. Venue is proper in this District Court pursuant to 28 U.S.C. 1391(b)(2)(3) as this is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated.

5. Additionally, venue is proper in this District Court because the Defendant resides in Sacramento County, which is within the jurisdiction of this District Court.

**FACTS**

6. Plaintiff is in the business of training and mentoring individuals regarding skills and techniques that are required or helpful in order for them to seek and obtain employment in the software sales industry.

7. Plaintiff markets its services through a website and social media sites such as LinkedIn.

8. Plaintiff charges a fee for its services that its clients are required to pay.

9. Plaintiff and its clients sign a written contract before services are provided.

10. That contract contains a description of the services offered, the price for those services, the method and schedule of payments, and other terms and conditions.

COMPLAINT - 2

11. On or about October 14, 2020, the plaintiff and Provins signed a Membership Agreement, attached hereto as **Exhibit A**.

12. Provins thereafter completed his mentoring and training program without incident or complaint.

13. Provins subsequently engaged in negotiations and discussions with the plaintiff for Provins to assist plaintiff in supporting and training its clients with the same materials and techniques and that he was successfully mentored without incident or complaint.

14. On or about May 1, 2021, the plaintiff, Provins, and Provins' company MTT Training, LLC ("MTT") executed an agreement entitled MTT Partner Service Agreement, attached hereto as **Exhibit B**.

15. In connection with the MTT Partner Service Agreement, the plaintiff and Provins also executed a Non-Disclosure Agreement on or about May 20, 2021, attached hereto as **Exhibit C**.

16. On or about August 26, 2021, Provins terminated the MTT Partner Service Agreement in writing, and plaintiff accepted and did not dispute their decision.

**Provins Disparages and Attacks Prehired on LinkedIn and Slack**

17. Provins posted this statement on LinkedIn on February 18, 2022:

   I am an alumni and I need to share the real story of Prehired - a boot

COMPLAINT - 3

camp which sells aspiring SDRs the dream of a career in tech sales, but often leaves them in debt, jobless and unable to break a $30,000 debt contract.

PreHired founder Joshua Jordan ✓ is actively suing 290 graduates, many without jobs or making a fraction of what was promised, because of their inability or unwillingness to forfeit 12.5% of their wages for a prerecorded video series and predatory "mentorship" from people with little to no sales background.

The worst part is they calculate your debt based on OTE, not base. Imagine being a brand new SDR on your first day of sales at a startup, making a $35,000 base salary and immediately having to pay off debt based on $70,000. This is more than false advertising. It's systematic abuse of new SDRs and doesn't represent the values of the tech community.

The bigger story here is how many reputable SaaS companies partner with PreHired. I don't blame these companies for hiring great people. They give a bad name to alternate education as a whole and do not represent the community helping aspiring SDRs break into SaaS.

I believe the program started with good intentions but has since been completely consumed by greed. There is no longer a path to succeed at PreHired, only a path to succeed in spite of it, and it's time to stand up. The LinkedIn SaaS community has always rushed to the defense of SDRs being abused, mistreated and manipulated. PreHired is an example of this on an institutional level.

I'm going to share more about my personal experience in the comments: the gaslighting, the false advertising and the ethical issues I witnessed, but more importantly, I want to use this post as a platform for YOU to share your unfiltered experience with PreHired. Please comment below. I know I am far from alone and it's time to come together and speak up.

18. Provins posted this statement on LinkedIn on February 18, 2022:

Yesterday, I shared the story of PreHired and allowed dozens of other

COMPLAINT - 4

alumni to share theirs.

Today, I wanted to share my story with you.

I joined PreHired in October of 2020 excited at the prospect of becoming highly paid young adult in SaaS sales. I had background in political organization as well as some experience in tech building websites and designing logos.

Their "six-week" bootcamp took me no more than 7-8 business days to fully complete before I moved into my career search process, which turned out to be a complete joke. Students at the time were required to submit 20+ applications a week almost aimlessly and send emails that were mostly ineffective. The training and feedback we received consisted of "submit more applications" and "send more emails".

I interviewed for nearly three months and faced such extraordinary amounts of ableism during this process, I brought it to the attention of PreHired management. After telling them I had just spoken with a Director of Sales who suggested "Maybe don't mention your disability to the VP" all they had to say was "bad luck, keep interviewing".

19. Provins posted this statement on LinkedIn on February 18, 2022:

Thank you, I fully agree with everything you've said. They're trying to ruin nearly 300 people's lives due to their own greed and the staff of Prehired has the power to stop it.

20. Upon information and belief, Provins' comments and posts have been viewed more than 750,000 times on LinkedIn to date.

21. Provins posted this statement on Slack on February 18, 2022, at 1:28 am:

"But the goal here is to get everyone released [from their contracts with plaintiff] by making sure PreHired goes under"

COMPLAINT - 5

22. Provins posted this statement on GoFundMe on February 21, 2022, "Help People Scammed by PreHired Fight Back!"

23. Provins posted this statement on Slack on February 19, 2022, at 4:30 pm:

> "I'm creating an email template to send to Josh Jordan on Monday asking for a contract withdrawal and we'll see what happens from there. Everyone under contract will need to send it. I'll include his contract info."

**Provins' Statements Have Damaged Plaintiff and Continue to Do So**

24. In the short period following Provins' statements, multiple clients and potential clients have cancelled sales calls and meetings, canceled executed contracts, and have informed the plaintiff that they have decided to not complete pending and negotiated transactions with the company.

25. A good number of these clients and potential clients have specifically cited and referred to the Provins statements as the basis or reason for their adverse decisions.

26. As a direct result of Provins' conduct and statements, the plaintiff has suffered substantial and ongoing damage to its business reputation and goodwill.

27. As a direct result of Provins' conduct and statements, the plaintiff has suffered substantial and ongoing financial damages in excess of $1,500,000, with the exact amount to be proven at trial.

COMPLAINT - 6

28. Plaintiff will continue to suffer these damages unless and until Provins is enjoined from making further improper statements about the plaintiff and is ordered and directed to remove his prior improper statements.

## AS AND FOR A FIRST CAUSE OF ACTION:
## TRADE LIBEL

29. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein again at length.

30. Some of the contents of Provins' LinkedIn postings and comments were false, and Provins knew that they were false or acted in reckless disregard of the truth when he published them.

31. The following statements or portions of those statements are false:

    A. "…but [Prehired] often leaves them in debt, jobless and unable to break a $30,000 debt contract."

    B. "PreHired founder Joshua Jordan ✓ is actively suing 290 graduates, many without jobs or making a fraction of what was promised, because of their inability or unwillingness to forfeit 12.5% of their wages for a prerecorded video series and predatory "mentorship" from people with little to no sales background."

    C. "This is more than false advertising. It's systematic abuse of new SDRs…"

    D. "There is no longer a path to succeed at PreHired, only a path to succeed in spite of it, and it's time to stand up. The LinkedIn SaaS community has always rushed to the defense of SDRs being abused, mistreated and manipulated. PreHired is an example of this on an institutional level."

COMPLAINT - 7

E. I'm going to share more about my personal experience in the comments: the gaslighting, the false advertising and the ethical issues I witnessed…

F. "Their "six week" bootcamp took me no more than 7-8 business days to fully complete before I moved into my career search process, which turned out to be a complete joke."

G. "Students at the time were required to submit 20+ applications a week almost aimlessly and send emails that were mostly ineffective."

H. "The training and feedback we received consisted of "submit more applications" and 'send more emails'."

I. "I interviewed for nearly three months and faced such extraordinary amounts of ableism during this process, I brought it to the attention of PreHired management. After telling them I had just spoken with a Director of Sales who suggested "Maybe don't mention your disability to the VP" all they had to say was 'bad luck, keep interviewing.'"

J. "They're trying to ruin nearly 300 people's lives due to their own greed and the staff of Prehired has the power to stop it."

K. "Help People Scammed by PreHired Fight Back!"

32. The statements made in Provins' postings and comments were libelous because the language contained in them disparaged the quality of plaintiff's services and contained defamatory meanings as opposed to innocent ones.

33. The statements made in Provins' postings and comments contained false and unprivileged statements about the plaintiff which have a tendency to

COMPLAINT - 8

injure the plaintiff in its business as well as to devalue its services, including its ability to promote its services in the marketplace.

34. Upon information and belief, Provins made his statements with malice or oppression, in that he had no good faith belief that his statements were true and or accurate, and he knew that such statements were false when made, or alternatively he willfully and wantonly disregarded the truth.

35. Upon information and belief, Provins' comments and posts have been viewed more than 750,000 times on the sites in which they were published to date.

36. As a direct and proximate result of Provins' ongoing libel, plaintiff has suffered and will continue to suffer substantial monetary losses and irreparable injury to its business reputation and goodwill.

37. Plaintiff accordingly has no adequate remedy at law to compensate it for the continuing injuries inflicted by Provins.

38. Plaintiff is entitled to temporary, preliminary, and permanent injunctive relief.

39. As approximate result of Provins' statements and comments, plaintiff has suffered general and special damages, including but not limited to, lost revenue, lost profits, damage to its business reputation and goodwill, administrative and legal costs in connection with its efforts to monitor and

COMPLAINT - 9

counteract his improper statements and comments, negative publicity, and other financial harm in an amount to be proven at trial but not less than $1,500,000.

40. Plaintiff is entitled to punitive damages because Provins' statements were made with malice or oppression, and with the intention to cause the plaintiff to lose the ability to continue its business.

## AS AND FOR A SECOND CAUSE OF ACTION: INTENTIONAL INTERFERENCE WITH BUSINESS RELATIONSHIPS

41. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein again at length.

42. Provins knew of plaintiff's existing agreements and business relationships with its potential and actual clients.

43. Upon information and belief, Provins had acted to and has in fact induced plaintiff's actual and potential clients to terminate their contracts and business relationships with the and potential clients to terminate their contracts and business relationships with the plaintiff.

44. Provins posted this statement on Slack on February 18, 2022, at 1:28 am: "But the goal here is to get everyone released [from their contracts with plaintiff] by making sure PreHired goes under."

COMPLAINT - 10

45. Provins posted this statement on Slack on February 19, 2022, at 4:30 pm: "I'm creating an email template to send to Josh Jordan on Monday asking for a contract withdrawal and we'll see what happens from there. Everyone under contract will need to send it. I'll include his contract info."

46. Provins willfully and deliberately committed these wrongful acts with the intent to interfere with plaintiff's contracts and business relationships.

47. As approximate result of Provins' improper conduct and actions, plaintiff has suffered general and special damages, including but not limited to, lost revenue, lost profits, damage to its business reputation and goodwill in an amount to be proven at trial but not less than $1,500,000

48. Plaintiff is entitled to punitive damages because Provins' statements were made with malice or oppression, and with the intention to cause the plaintiff to lose the ability to continue its business.

COMPLAINT - 11

**WHEREFORE,** plaintiff demands judgment against Defendant as follows:

A. For general damages in an amount to be proven at trial, but not less than $1,500,000.00;

B. For special damages in an amount to be proven at trial, but not less than $1,500,000;

C. For punitive damages;

D. For a permanent injunction prohibiting defendant from (a) interfering with plaintiff's business relationships and clients in violation of the applicable law, and (b) making further statements constituting trade libel under applicable law;

E. For an order directing and compelling defendant to remove his improper posts and comments on LinkedIn, Slack, and Gofundme as specified in this complaint;

F. Enjoining defendant from communicating with plaintiff's customers;

G. Awarding plaintiff the costs and disbursements incurred in this action, including reasonable attorney's fees; and

H. For such other and further relief as this Court deems just and proper.

Dated this 1st day of March, 2022

Respectfully submitted,
/s/ John J. Keenan
John J. Keenan SBN 242487

COMPLAINT - 12