UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PREHIRED, LLC,<br><br>             Plaintiff,<br><br>       v.<br><br>MATTHEW PROVINS,<br><br>             Defendant. | No. 2:22-cv-00384-TLN-AC<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER** |

    This matter is before the Court on Plaintiff Prehired LLC's ("Plaintiff") Motion for a Temporary Restraining Order ("TRO"). (ECF No. 5.) Defendant Matthew Provins ("Defendant") has filed an opposition. (ECF No. 20.) Plaintiff has filed a reply. (ECF No. 23.) For the reasons set forth below, the Court hereby DENIES Plaintiff's motion.

///
///
///
///
///
///
///
///

1

### I.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is involved in the business of training and mentoring workers as to how to obtain a better job at a higher pay. (ECF No. 5-3, ¶ 5.) Plaintiff markets its services through website and social media sites such as LinkedIn. (*Id.* at ¶ 6.) Plaintiff charges a fee for its services; however, no fee is charged before a client obtains a job or completes the program. (*Id.* at ¶¶ 7–8.)

On or about October 14, 2020, Plaintiff and Defendant signed a membership agreement, and Defendant thereafter completed his membership program without incident or complaint. (*Id.* at ¶¶ 11–12.) Plaintiff and Defendant subsequently entered into negotiations for Defendant to assist Plaintiff with marketing its business and training its clients. (*Id.* ¶ 13.) On May 1, 2021, Plaintiff and Defendant executed an agreement entitled "MTT Partner Service Agreement." (*Id.* at ¶ 14.) In connection with the MTT Partner Service Agreement, the parties entered into a Non-Disclosure Agreement on May 20, 2021. (*Id.* at ¶ 15.) On August 26, 2021, Defendant terminated the MTT Partner Service Agreement in writing, which Plaintiff did not dispute. (*Id.* at ¶ 16.)

According to Plaintiff, after the parties ended the MTT Partner Service Agreement, Defendant initiated a "campaign to damage the . . . business and to benefit his own business." (*Id.* at ¶¶ 17–18.) On February 18, 2022, Defendant posted to LinkedIn stating among other things that Plaintiff leaves its customers in debt, Plaintiff sues its customers, Plaintiff is consumed by greed, and Plaintiff is filled with "gaslighting, [] false advertising and ethical issues." (*Id.* at ¶ 18.) That same day, Defendant made another post on LinkedIn where he stated he "wanted to share [his] story," including that Plaintiff dissuaded him from sharing his disability status to future employers. (*Id.* at ¶ 19.) Plaintiff made additional posts including one to Slack stating his "goal here is to get everyone released [from their contracts with Plaintiff] by make[ing] sure [Plaintiff] goes under," and one to GoFundMe stating "Help People Scammed by [Plaintiff] Fight Back!" (*Id.* at ¶¶ 22–23.)

Plaintiff alleges that in the short period following Defendant's statements, multiple clients and potential clients have cancelled sales calls and meetings, cancelled executed contracts, and decided to not complete pending contracts with Plaintiff. (*Id.* at ¶ 25.) Plaintiff states many of

2

1   these clients and potential clients have specifically referenced Defendant's statements as their
2   basis for withdrawing their business. (*Id.* at ¶ 26.)

3   As a result of Defendant's statements Plaintiff alleges it has lost a contract worth $20,000
4   and contractual partners whose work resulted in substantial revenue — including a partner who
5   was expected to provide $2 million in revenue to Plaintiff. (*Id.* at ¶¶ 28, 30–31.)

6   Plaintiff filed this action on March 1, 2022, bringing claims for trade libel and intentional
7   interference with business relationships. (ECF No. 1.)

8   **II.   STANDARD OF LAW**

9   A TRO is an extraordinary remedy. The purpose of a TRO is to preserve the status quo
10  pending a fuller hearing. *See* Fed. R. Civ. P. 65. In general, "[TROs] are governed by the same
11  standard applicable to preliminary injunctions." *Aiello v. One West Bank*, No. 2:10-cv-00227-
12  GEB-EFB, 2010 WL 406092, at *1 (E.D. Cal. Jan. 29, 2010) (internal citations omitted); *see also*
13  Eastern District of California Local Rule ("Local Rule") 231(a).

14  Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear
15  showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555
16  U.S. 7, 22 (2008) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)). "The
17  purpose of a preliminary injunction is merely to preserve the relative positions of the parties until
18  a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981); *see also*
19  *Costa Mesa City Emps. Ass'n v. City of Costa Mesa*, 209 Cal. App. 4th 298, 305 (2012) ("The
20  purpose of such an order is to preserve the status quo until a final determination following a
21  trial."); *GoTo.com, Inc. v. Walt Disney, Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) ("The status quo
22  ante litem refers not simply to any situation before the filing of a lawsuit, but instead to the last
23  uncontested status which preceded the pending controversy.").

24  "A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed
25  on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief,
26  [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."
27  *Winter*, 555 U.S. at 20. A plaintiff must "make a showing on all four prongs" of the *Winter* test
28  to obtain a preliminary injunction. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135

(9th Cir. 2011). In evaluating a plaintiff's motion for preliminary injunction, a district court may weigh the plaintiff's showings on the *Winter* elements using a sliding-scale approach. *Id*. A stronger showing on the balance of the hardships may support issuing a preliminary injunction even where the plaintiff shows that there are "serious questions on the merits . . . so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id*. Simply put, plaintiffs must demonstrate, "that [if] serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply" in [p]laintiffs' favor in order to succeed in a request for preliminary injunction. *Id*. at 1134–35.

### III.  ANALYSIS

Plaintiff requests the Court enjoin Defendant from continuing to publish false and defamatory statements while competing against Plaintiff. (ECF No. 5-1.) First, the parties dispute whether the statements made by Defendant are protected by the First Amendment as a prior restraint. The Court will first address the prior restraint issue and then address the factors set forth in *Winter*.

#### A.  Prior Restraint

Defendant argues Plaintiff's request that Defendant be restrained from "making further statements" would violate the First Amendment as a prior restraint. (ECF No. 20 at 9.) "The term prior restraint is used to describe administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur." *Alexander v. United States*, 509 U.S. 544, 550 (1993) (emphasis, citation, and quotation marks omitted). "Temporary restraining orders and permanent injunctions — i.e., court orders that actually forbid speech activities — are classic examples of prior restraints." *Id.* (citation omitted). "[P]rior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights." *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976). "There is a heavy presumption against prior restraints on speech, and they are subject to the strict scrutiny standard of review." *Dan Farr Prods. v. U.S. Dist. Ct. (In re Dan Farr Prods.)*, 874 F.3d 590, 593 n.2 (9th Cir. 2017). A prior restraint "may be upheld only if . . . (1) the activity restrained poses either a clear and present danger or a serious and imminent threat to a protected

competing interest, (2) the [injunction] is narrowly drawn, and (3) less restrictive alternatives are not available." *Levine v. U.S. Dist. Ct.*, 764 F.2d 590, 595 (9th Cir. 1985) (citations omitted).

Plaintiff requests the Court order Defendant to cease making further statements constituting trade libel, to remove "improper posts" and comments on various social media platforms, and to stop communicating with Plaintiff's customers. (ECF No. 12.) These are classic prior restraints that seek to limit Defendant's speech, and Plaintiff has failed to meet the strict-scrutiny standard necessary for such prior restraint.

Although Plaintiff categorizes Defendant's statements as "defamatory" (ECF No. 5-1 at 1), "[w]here there has been no trial and no determination on the merits that there is actionable defamation, . . . the court cannot prohibit a party from making statements characterized only as 'false and defamatory.'" *Elec. Frontier Found. v. Global Equity Mgmt. (SA) Pty. Ltd.*, 209 F. Supp. 3d 923, 943, *12 n.10 (N.D. Cal. 2017) (citing *Evans v. Evans*, 162 Cal. App.4th 1157, 1169 (2008)) (internal quotation marks omitted); *see also Allen v. The Ghoulish Gallery*, No. CIV 06CV371NLS, 2007 WL 1555739, at *3 (S.D. Cal. May 23, 2007) ("Defamatory statements cannot be restrained; the remedy for defamation is a damages action after publication.").

Plaintiff has not provided any persuasive authority that the speech at issue here is excepted from the bar to prior restraint of speech nor has Plaintiff provided authority explaining why the prior restraint at issue meets the strict scrutiny standard of review. Plaintiff instead argues the defamatory statements constitute "trade libel" and therefore can be enjoined. Plaintiff cites to *CapStack Nashville 3 LLC et al v. MACC Venture Partners*, No. 2018-0552-SG, 2018 WL 3949274 (De. Ch. Aug 16, 2018), an unpublished Delaware state court case which this Court gives little weight, if any.

Plaintiff has not persuaded the Court that the issuance of a temporary restraining order would not constitute an unconstitutional prior restraint. Although this conclusion is dispositive standing alone, the Court further concludes Plaintiff does not meet the *Winter* factors necessary for issuance of a temporary restraining order.

///

///

B. *Winter* Factors

Defendant argues Plaintiff cannot establish a likelihood of success on the merits of its trade libel and intentional interference claims. The Court will address each claim in turn.

i. *Trade Libel*

"Trade libel is the publication of matter disparaging the quality of another's property, which the publisher should recognize is likely to cause pecuniary loss to the owner." *ComputerXpress, Inc. v. Jackson*, 93 Cal. App. 4th 993, 1010 (2001) (citing *Leonardini v. Shell Oil Co.*, 216 Cal. App. 3d 547, 572 (1989)). To constitute trade libel, the statement in question *must* be a false statement of fact; opinions cannot support a trade libel claim. *Id.* at 1010–11; *see also Films of Distinction, Inc. v. Allegro Film Prods., Inc.*, 12 F. Supp. 2d 1068, 1082 (N.D. Cal. 1998) ("[O]pinions [are] protected under the First Amendment."). And, in the Ninth Circuit, plaintiffs must identify specific statements constituting trade libel. *See First Advantage Background Servs. v. Private Eyes, Inc.*, 569 F. Supp. 2d 929, 937 (N.D. Cal. 2008).

Defendant argues Plaintiff cannot succeed on the merits of their trade libel claim because his statements were opinion, and Plaintiff cannot prove fault. The Court will address each argument.

a. Opinion

Defendant argues a reasonable reader would not see his posts as anything other than opinion. (ECF No. 20 at 12.) Plaintiff maintains they were not opinions but part of a scheme to gain an unfair trade advantage. (ECF No. 24 at 4.) The statements Plaintiff alleges constitute trade libel are:

> A. ". . . but [Prehired] often leaves them in debt, jobless and unable to break a $30,000 debt contract."
>
> B. "PreHired founder Joshua Jordan [] is actively suing 290 graduates, many without jobs or making a fraction of what was promised, because of their inability or unwillingness to forfeit 12.5% of their wages for a prerecorded video series and predatory 'mentorship' from people with little to no sales background."
>
> C. "This is more than false advertising. It's systematic abuse of new SDRs . . ."

D. "There is no longer a path to succeed at PreHired, only a path to succeed in spite of it, and it's time to stand up. The LinkedIn SaaS community has always rushed to the defense of SDRs being abused, mistreated and manipulated. PreHired is an example of this on an institutional level."

E. "I'm going to share more about my personal experience in the comments: the gaslighting, the false advertising and the ethical issues I witnessed. . . ."

F. "Their 'six week' bootcamp took me no more than 78 business days to fully complete before I moved into my career search process, which turned out to be a complete joke."

G. "Students at the time were required to submit 20+ applications a week almost aimlessly and send emails that were mostly ineffective."

H. "I interviewed for nearly three months and faces such extraordinary amounts of ableism during this process, I brought it to the attention of PreHired management. After telling them I had just spoken with a Director of Sales who suggested 'Maybe don't mention your disability to the VP' all they had to say was 'bad luck, keep interviewing."

I. "They're trying to ruin nearly 300 people's lives due to their own greed and the staff of Prehired has the power to stop it."

J. "Help People Scammed by PreHired Fight Back!"

(ECF No. 1 at 78.)

Here, the posts are not *entirely* opinion. It contains a blend of subjective opinions and what could be provably false assertions of fact. "If a statement of opinion implies a knowledge of facts which may lead to a defamatory conclusion, the implied facts must themselves be true." *Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*, 946 F. Supp. 2d 957, 972 (N.D. Cal. 2013), aff'd, 609 F. App'x 497 (9th Cir. 2015) (quoting *Ringler Associates Inc. v. Maryland Casualty Co.*, 80 Cal. App. 4th 1165, 1181 (2000)). If an online post contains "exaggerated speech and broad generalities, [and still shows] all indicia of opinion," *USA Tech., Inc. v. Doe*, 713 F. Supp. 2d 901, 908 (N.D. Cal. 2010) (quoting *Global Telemedia Int'l, Inc. v. Doe 1*, 132 F. Supp. 2d 1261, 1270 (C.D. Cal. 2001)), Defendant is not required to prove *every* word is true. *See Smith v. Maldanado*, 72 Cal. App. 4th 637, 647 (1999) (finding defendant was not required

1 prove truth in entirety if defendant could "prove[] the substance of the charge, irrespective of
2 slight inaccuracy").

3   Defendant argues he will be able to prove the assertions of facts are true because they are
4 based on his personal knowledge. (ECF No. 20 at 13.) Defendant submits to the Court a
5 declaration asserting the truth of several of the factual statements made on the social networking
6 sites. (*See* ECF No. 21.) Plaintiff submits — assumedly to disprove the truth of the statements
7 — a declaration and screenshots with statements made by Defendant on LinkedIn, none of which
8 appear to disprove the statements outlined above. (*See* ECF No. 23-1 at 13) (For example: "My
9 current recommendation is to move payments to a bank account you don't use so they can't
10 charge you. Do not communicate to PreHired"; "My goal is to get as close to that 290 mark of
11 contract releases"; "I've been in Forbes and international reviews, we're going to wreck them";
12 "The game plan is to force their hand to withdraw all lawsuits and release contracts"; "Also we
13 have official backing from a legit bootcamp"; "Enough bad publicity and they'll lose all hiring
14 partners, more staff will resign, and they'll have no way to come back"). Plaintiff also submits a
15 Twitter post where Defendant posted that he received a promotion and "could never have gotten
16 this far without [Plaintiff]." (ECF No. 23-2 at 2.) Again, this statement does not prove as false
17 any of the statements made above. Similarly, Defendant's employment offer from July 20, 2021,
18 fails to prove any of the statements as false. (ECF No. 23-3 at 2.)

19   Issuance of a temporary restraining order is an extraordinary remedy, and Plaintiff has the
20 burden of proving the propriety of such a remedy. *Common Sense Party v. Padilla*, 469 F. Supp.
21 3d 951, 957 (E.D. Cal. 2020), *appeal dismissed*, 834 F. App'x 335 (9th Cir. 2021) (citing
22 *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). It is unclear to the Court that Plaintiff can
23 prove that the statements made by Defendant are in fact false. Plaintiff has not carried this
24 burden and simply saying they are false is insufficient to warrant this extraordinary remedy.

25                              b.  Fault

26   In a trade libel case, California requires Plaintiff to prove actual malice, which Plaintiff
27 must prove with "clear and convincing" evidence. *Exeltis USA Inc. v. First Databank, Inc.*, 520
28 F. Supp. 3d 1225, 1235 (N.D. Cal. 2021); *Melaluca, Inc. v. Clark*, 66 Cal. App. 4th 1344, 1358

1  (1998). "Actual malice consistently has been deemed subjective in nature, provable only by
2  evidence that the defendant 'realized that his statement was false or that he subjectively
3  entertained serious doubt as to the truth of his statement.'" *Exeltis USA Inc.*, 520 F. Supp. 3d at
4  1236 (quoting *Newton v. Nat'l Broad. Co.*, 930 F.2d 662, 668, n.30 (9th Cir. 1990)).

Defendant argues Plaintiff cannot prove actual malice. (ECF No. 20 at 14.) Plaintiff argues Defendant knew the statements were false and said them as part of a scheme to destroy Plaintiff's business. (ECF No. 24 at 34.) As noted, Plaintiff's conclusory assertions, without more, are insufficient to convince the Court that Defendant's statements are in fact false or that Defendant knew they may have been false.

In sum, Plaintiff has not shown it is likely to succeed on the merits of its trade libel claim.

*ii. Intentional Interference with Business Relationship*

The elements of the tort of intentional interference with prospective economic advantage are as follows: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional wrongful acts on the defendant's part designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the defendant's acts." *Rondberg v. McCoy*, No. 09-CV-1672-H (CAB), 2009 WL 3017611, at *9 (S.D. Cal. Sept. 21, 2009) (quoting *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003)) (internal quotations omitted). Plaintiff must plead that "the defendant's conduct was 'wrongful by some legal measure other than the fact of interference itself.'" *Rondberg*, 2009 WL 3017611, at *9.

Plaintiff alleges Defendant knew about Plaintiff's business relationships and acted to induce those clients to terminate their contracts. (ECF No. 1 at 10.) Plaintiff asserts Defendant posted to Slack that his "goal here [was] to get everyone released [from their contracts with Plaintiff] by making sure [Plaintiff] goes under." (*Id.*) Plaintiff states that it lost revenue and profits of more than $1,500,000 because of Defendant's statements. (*Id.* at 11.)

The Court need not determine if Plaintiff will succeed on this claim because it is evident that Plaintiff cannot establish that any interference, if it occurred, rises to irreparable harm.

9

Plaintiff argues in total that the harm is irreparable because "Defendant is a twenty-one-year-old person who has no substantial assets to satisfy any possible judgment" and thus Plaintiff's injury "cannot be compensated by an award of monetary damages." (ECF No. 5-4 at 1.)

"[E]conomic injury alone does not support a finding of irreparable harm, because such injury can be remedied by a damage award. *Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991). Plaintiff has failed to provide the Court with any other basis for irreparable harm. Nor has Plaintiff provided any support whatsoever for the proposition that financial loss constitutes economic harm when the defendant is potentially, but not proven, insolvent. The Court finds Plaintiff's allegations are insufficient to warrant the extraordinary remedy of a temporary restraining order.

Plaintiff must make a clear showing on all four prongs of the *Winter* test to be eligible for the extraordinary remedy of a temporary restraining order. *See All. for the Wild Rockies*, 632 F.3d at 1135. Since the Court concludes Plaintiff has not made the required showing of a likelihood of success on the merits or imminent and irreparable harm in the absence of a temporary restraining order, the Court declines to address the remaining *Winter* factors. *See MD Helicopters, Inc. v. Aerometals, Inc.*, No. 2:16-cv-02249-TLN-AC, 2018 WL 489102, at *2 (E.D. Cal. Jan. 19, 2018).

### IV.   CONCLUSION

For the foregoing reasons, the Court hereby DENIES Plaintiff's Motion for a Temporary Restraining Order. (ECF No. 5.)

IT IS SO ORDERED.

**DATED: April 12, 2022**

Troy L. Nunley
United States District Judge