Nicholas J. Jollymore (State Bar No. 291321)
JOLLYMORE LAW OFFICE, P.C.
425 First Street, no. 3004
San Francisco, California 94105
Telephone:     (415) 829-8238
Email:         nicholas@jollymorelaw.com

Attorney for Defendant
MATTHEW PROVINS

## IN THE UNITED STATES DISTRICT COURT
## THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PREHIRED, LLC,<br><br>        Plaintiff,<br><br>vs.<br><br>MATTHEW PROVINS,<br><br>        Defendant | Case No.: 2:22-cv-00384-TLN-AC<br><br>**DEFENDANT'S MOTION TO STRIKE COMPLAINT UNDER CALIFORNIA'S ANTI-SLAPP STATUTE, CAL. CIV. PROC. CODE 425.16**<br><br>Date:   June 2, 2022<br>Time:   2:00 PM<br>Dept:   Courtroom 2 – 15 Floor<br>Judge: Hon. Troy L. Nunley<br><br>Complaint Filed: March 1, 2022 |

**TO PLAINTIFF PREHIRED, LLC AND ITS COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on June 2, 2022, at 2:00 PM, or as soon thereafter as this matter may be heard in Courtroom 2 – 15th Floor of the United States District Court for the Eastern District of California, located at the Robert T. Matsui United States Courthouse, 401 I Street, Sacramento, CA 958124-7300, Honorable Troy L. Nunley presiding, Defendant Matthew Provins ("Provins"), by and through his attorney, will hereby respectfully move the Court for an order striking the Complaint of Plaintiff PreHired, LLC ("PreHired"), with prejudice, and for attorneys' fees, pursuant to the California anti-SLAPP statute, California Civil Procedure Code § 425.16, for the following reasons:

1. PreHired's two actions  -- for defamation by trade libel and for intentional interference with business relationships -- fall squarely within the scope of Cal. Civ. Proc. Code 425.16(e)(2), (e)(3), and (e)(4).  The only acts complained of are Provins' protected free speech.  All PreHired's claims arise from online comments about PreHired that Provins posted over a period of four days on three online networks, LinkedIn.com, Slack.com, and GoFundMe.com.  Provins' online comments addressed the facts behind 290 collection lawsuits that PreHired's founder and CEO[1] filed in Delaware courts to enforce contracts that Provins believed put many PreHired graduates in debt for up to eight years.  Those online comments were, therefore, made in connection with an issue under review by a judicial body in an official proceeding.  They fall within Cal. Civ. Proc. Code 425.16(e)(2).  Provins' online comments were also made on the public forum of an internet website on a matter of public intertest in California – namely the efficacy and legitimacy of for-profit online vocational schools.  So, the comments fall under Cal.

---

[1] Joshua Jordan, the founder and CEO of Plaintiff PreHired, LLC, filed the 290 collection actions as an agent of Prehired Recruiting, LLC, a Delaware limited liability company that Jordan set up just weeks before he began filing the collection actions.  Declaration of Matthew Provins ¶¶12-14.  "Prehired Recruiting, LLC and Prehired, LLC appear to have both been recently formed as Delaware limited liability companies for the purposes of creating a nexus to [the] state." (quoting letter from Delaware Deputy Attorney General Katherine M. Devanney).  Provins Decl. ¶14.  Either or both limited liability companies are referred to herein as "PreHired," unless context requires that they be distinguished.

Civ. Proc. Code §§ 425.16(e)(3-4), as well.  As a result, Plaintiff has the burden of proof to present evidence establishing a probability that it will prevail on its claims.

2. PreHired cannot meet this burden.  PreHired's burden is to prove, with evidence, first, that Provins' online posts – made on some of the most-used online professional networks in the nation -- were not opinions, protected by the First Amendment.  It is obvious both from the language used in the online posts and their context online, that the posts are opinions based on disclosed facts.  The facts in the posts were based on Provins' own personal observations (he trained at PreHired; he later worked there as a contractor) and the opinions, albeit many hyperbolic, were his own ("abused," "greed," mistreated," "a complete joke," gaslighting, etc.).  PreHired cannot prove otherwise.  Second, PreHired is required to  prove the requisite fault on Provins' part (whether actual malice or negligence) in posting the comments.  Provins' posts, however, were based on his own personal knowledge -- things that Provins experienced and witnessed at PreHired, and facts he learned working with others who trained or labored there.  He had no knowledge of falsity, no reckless disregard of his own reported observations, nor any lack of due care in reporting what he learned.  Plaintiff cannot prove otherwise.  PreHired cannot salvage its intentional infliction claim, since it is unsupportable on its merits, and also because the claim derivative and is based on only two statements posted online, which enjoy the same First Amendment protection as the alleged defamation.

DATED: April 11, 2022                      Respectfully submitted,

JOLLYMORE LAW OFFICE, P.C.


By:  _____/s/  Nicholas J. Jollymore_____.
        Nicholas J. Jollymore

Attorney for Defendant
MATTHEW PROVINS

## <u>TABLE OF CONTENTS</u>

NOTICE AND INTRODUCTION……..………………………….………..……..2

MEMORANDUM OF POINTS AND AUTHORITIES ……………………………. 10

FACTUAL BACKGROUND ……………………………..……………....……... 10

ARGUMENT: PREHIRED'S COMPLAINT SHOULD BE STRUCK PURSUANT TO THE CALIFORNIA ANTI-SLAPP STATUTE ……………………………....……….. 11

I.   <u>History, Function and Application of the Anti-SLAPP Statute</u> ……..…………….…... 11

A.   The Two-Step Process of the Anti-SLAPP Statute ………………….……..… 12

B.   Application of the Three Relevant Subcategories ……..……………….……..…. 12

    1.   The Posts Concerned an Issue Under Consideration by a Judicial Body …..….…... 13

    2.   Provins Posted in Comment Areas of Websites, Which are Public Forums …........... 15

    3.   The Posts Were Speech in Furtherance of an Issue of Public Interest ……………... 16

C.   The Burden now Shifts to PreHired to Oppose the Anti-SLAPP Statute ……............... 19

II. <u>PreHired Cannot Show Probability of Prevailing on the Merits of Its First Claim – Defamation by Trade Libel</u> ………………………………….………………… 20

A.   The Posts are Opinions Protected by the First Amendment or are Otherwise Non-Actionable ………………………..………………………….……………..… 20

    1.   Rhetorical Hyperbole ……………..…....………………………………………....22

    2.   Common Opinion ……………………....……………………………..… 23

    3.   Disclosed Facts …………….……....……………………………………… 23

B.   PreHired Cannot Show the Requisite Degree of Fault ………………………....……... 23

III. <u>PreHired Cannot Prove a Probability of Prevailing on Its Second Claim – Intentional Interference with Business Relationships</u> ………………………….……………... 25

A.   PreHired's Intentional Interference Claim Fails Because it is Derivative ……....……... 26

    1.   PreHired Cannot Show Provins Engaged in Intentional "Wrongful Conduct" Designed to Disrupt Business Relationships. …………………....….......................................… 26

DEFENDANT'S MOTION TO STRIKE COMPLAINT AND MEMORANDUM

2.  Conduct Protected by the First Amendment Cannot be "Wrongful" ………..……..… 27

B.  PreHired Cannot Produce Evidence of Key Elements of its Claim of Intentional Interference with Business Relationships …………………..…………….....……….... 27

1.  Provins Knew Of No Disrupted Business Relationships That Caused Loss To PreHired …………………………………………………………………………………….... 28

2.  PreHired is Unlikely to Prove Provins Proximately Caused Economic Harm  ...........  28

C.  Provins is Allowed to Compete with PreHired Under the Competition Privilege ……….  29

IV.  Conclusion …………………………………………………………………..…  29

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Balla v. Hall,*
 59 Cal. App. 5th 652, 673 Call. Rptr. 3d 695 (4th Dist. 2021) ……………….……… 16

*Barrett v. Rosenthal,*
 40 Cal. 4th 33, 51 Cal. Rptr. 3d 55, 146 P.3d 510 (2006) …………………………. 16

Blatty v. New York Times Co.,
 42 Cal.3d 1033, 232 Cal. Rptr. 542 (Cal. 1986) …………………….……..……. 21

*Briggs v. Eden Council for Hope & Opportunity,*
 19 Cal. 4th 1106, 81 Cal. Rptr. 2d 471, 969 P.2d 564 (1999) …………...……..... 12,17

*Brown v. Kelly Broadcasting Co.,*
 48 Cal.3d 711, 257 Cal. Rptr. 708, 771 P.2d 406 (1989*)* …………………..……...… 25

*Church of Scientology v. Wollersheim,*
 42 Cal. App. 4th 628, 49 Cal. Rptr. 2d 620 (2d Dist. 1996*)* …………………….… 13

*ComputerXpress, Inc. v. Jackson,*
 93 Cal. App. 4th 993, 113 Cal. Rptr. 2d 625 (4th Dist. 2001) ……………………. 17

*Contemporary Services Corp. v. Staff Pro,*
 61 Cal. Rptr. 3d 434, 152 Cal. App. 4th *1043* (Cal. App. 2007) …………………. 26,27

*Cook, Perkiss and Liehe, Inc. v. Northern California Collection Service Inc.,*
 911 F.2d 242 (9th Cir. 1990) ………………………………………………………… 22

*Crossroads Investors, L.P. v. Federal National Mortgage Association,*
 13 Cal. App. 5th 757, 222 Cal. Rptr. 3d 1 (3d Dist. 2017) ……………………...…… 15

*Damon v. Ocean Hills Journalism Club*,
 85 Cal. App. 4th 468, 102 Cal. Rptr. 2d 205, (4th Dist. 2000) …………..………….… 16

*Deerpoint Grp., Inc. v. Agrigenix, LLC,*
 393 F. Supp 3d 968 (E.D. Cal. 2019) ……………………………………………… 27

*Edwards v. Hall,*
 285 Cal. Rptr. 810, 234 Cal. App. 3d 886 (1992) ………………………………… 23

*Equilon Enterprises v. Consumer Cause, Inc*
  29 Cal. 4th 53, 124 *Cal.* Rptr. 2d 507, 52 P.3d 685 (2002*)* ……………...………….11

*Exeltis USA Inc. v. First Databank, Inc,.*
 520 F. Supp 3d 1225 (N.D. Cal. 2021) ………………………………………..…… 24

*Ferlauto v. Hamsher*,
 88 Cal. Rptr. 2d 843, *974* Cal. App. 4th 1394 (2d Dist. 1999) ……..…………..…… 22

*Films of Distinction v. Allegro Film Productions*,

DEFENDANT'S MOTION TO STRIKE COMPLAINT AND MEMORANDUM

12 F. Supp 2d 1068 (C.D. Cal. 1998) ……………………………………..…… 22

*Fremont Reorg. Corp. v. Faigin*,
198 Cal. App. 4th 1153, 131 Cal. Rptr. 3d 478 (2011) ……………………………… 15

*Gardner v. Martino*,
563 F.3d 981 (9th Cir. 2009) ………………………………………………… 26

*Global Telemedia Intern., Inc. v. Doe 1*,
132 F. Supp 2d 1261 (C.D. Cal. 2001) ……………………………………..…… 21

*Golden Eagle Land Inv., L.P. v. Rancho Santa Fe Ass'n*,
227 Cal. Rptr. 3d 903, 19 Cal. App. 5th 399 (Cal. App. 2018) …………..……… 26,27

*Graham-Sult v. Clainos*,
738 F.3d 1131 (*9th* Cir. 2013) …………………………………………..……… 14

*Greater La Agency on Deafness v. Cable News Network, Inc.*,
862 F. Supp 2d 1021 (E.D. Cal. 2012) ……………………………………..…… 19

*Jackson v. Mayweather*,
10 Cal. App. 5th *1240*, 217 *Cal.* Rptr. 3d 234 (2d Dist. 2017) ………………..…… 15

*Jarrow Formulas, Inc. v. LaMarche*,
31 Cal.4th 728, 3 Cal. Rptr. 3d 636, 74 P.3d 737 (Cal. 2003) ………………..…… 12

*Khawar v .Globe International, Inc.*,
79 Cal. Rptr. 2d 178, 19 Cal.4th 1073A, 19 Cal. 4th 254, 965 P.2d 695 (1998) …….. 25

*Knievel v. ESPN*,
393 F.3d 1068 (9th *Cir.* 2005) …………………………………………..……… 21

*Korea Supply Co. v. Lockheed Martin Corp.*,
29 Cal.4th 1134, 131 Cal. Rptr.2d 29, 63 P.3d 937 (Cal. 2003) ………………..…… 27

*Kurz v. Syrus Systems, LLC*,
221 Cal. App. 4th 748, 164 Cal Rptr. 3d 554 (6th Dist. 20130 ……..……………… 13

*Kyle v. Carmon*,
71 Cal. App. 4th *901*, 84 Cal. Rptr. 2d 303 (3d Dept. 1999) ………………………… 20

*Low v. Trump Univ., LLC*,
881 F.3d 1111 (9th Cir. 2018) …………………………………………..……… 18

Makaeff v. Trump Univ., LLC,
715 F.3d 254, 276 (9th Cir. 2013) …………………………………………..…… 18

*Med. Lab Mgmt. Consultants v. ABC*,
306 F.3d 806 (9th Cir. 2002) ……………………………………………………… 26

DEFENDANT'S MOTION TO STRIKE COMPLAINT AND MEMORANDUM

*Melaleuca, Inc. v. Clark*,
    78 Cal. Rptr. 2d 627, 66 Cal. App. 4th 1344 (Cal. App. 1998) ……………………… 24

*Muddy Waters, LLC v. Superior Court of San Bernardino City*,
    62 Cal. App. 5th *905*, 277 Cal. Rptr. 3d 204 (4th Dist. 2021) ……………..……… 17,28

*Neville v. Chudacoff*,
    160 Cal. App. 4th *1255*, 73 Cal. Rptr. 3d 383 (2d Dist. 2008*)* ……………………..…… 15

*New York Times Co. v. Sullivan*,
    376 U.S. 254 (1964) ……………………………………………..……………… 23

*Ogdon v. Grand Canyon University*,
    No. 1:20-cv-00709-DAD-SK (E.D. Cal. 2022) ……………………………………… 18

*Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
    774 F.3d 598 (9th Cir. 2014) …………………………………………………… 18

*People ex rel. Lockyer v. Brar*,
    9 Cal. Rptr. 3d 844, 115 Cal. App. 4th 1315 (Cal. App. 2004) ………..……………... 11

PMC, Inc. v. Saban Entertainment, Inc.,
    52 Cal. Rptr. 2d 877, 892, 45 Cal. App. 4th 579 (2d Dist. 1996) ………..………….. 29

*Resolute Forest Prods., Inc. v. Greenpeace Int'l.*
    302 F. Supp *3d 1005* (N.D. Cal. 2017) …………………………………………… 26

*Rumble, Inc. v. Daily Mail Y Gen. Trust PLC*,
    459 F. Supp.3d 1294 (C.D. CA 2020) …………………………………………… 26

*San Francisco Design Center Associates v. Portman Companies*,
    41 Cal. App. 4th *716*, 38 Cal. Rptr. 2d 270 (1st Dist. 1995) ………………………… 29

*Schaffer v. City and County of San Francisco*,
    168 Cal. App. 4th 992, 85 Cal. Rptr. 3d 880 (1st Dist. 2008) ……………………… 17

*Sheppard v. Freeman*,
    79 Cal. Rptr. 2d 13, 67 *Cal. App.* 4th 339 (4th Dist. 1998) ………..……………… 26

*Summit Bank v. Rogers*,
    306 Cal. App. 4th 669, *142* Cal. Rptr. 3d 40 (Cal App. 2021) …………..……… 16,21,22

*Takhar v. People ex rel. Feather River Air Quality Management District*,
    27 Cal. App. 5th 15, *237* Cal. Rptr. 3d 759 (3d Dist. 2018) ………………………… 13,14

*Taus v. Loftus*,
    40 Cal. 4th 683, 54 *Cal*. Rptr. 3d 775, 798, 825 (2007) ………………………….... 20

*Tri-Growth Centre City, Ltd. v. Silldorf, Burdman, Duignan & Eisenberg*,
    216 Cal. App. 3d *1139*, 265 Cal. Rptr. 330, 337 (4th Dist. 1989) …………..……… 29

*U.S.* v. *Corinthian Colleges*,
    655 F.3d 984 (9th *Cir*. 2011) ………………………………………….……… 18

*Underwager v. Channel 9 Australia*,
    69 F.3d 361 (9th *Cir.* 1995) …..……………………………………...……….. 22

*Wilbanks v. Wolk*,
    121 Cal. App. 4th 883, 17 Cal. Rptr. 3d 497 (1st Dist. 2004) …………..………… 16, 19

*Wilson v. Cable News Network, Inc.*,
    7 Cal.5th 871, 444 P.3d 706, 249 Cal. Rptr. 3d 569 (Cal. 2019) ……………..…….. 16

**Statutes**

California Code of Civil Procedure

    § 425.16 …………………………………………………………………… *passim*
    § 425.16(a) …………………………………………………………………… 14
    § 425.16(b)(1) ………………………………………………………………… 20
    § 425.16(e)(2) ………………………………………………………………… 12
    § 425.16 (e)(3) ………………………………………………………… 12, 15, 16
    § 425.16 (e)(4) ………………………………………………………….. 12, 16

## MEMORANDUM OF POINTS AND AUTHORITES

## FACTUAL BACKGROUND

PreHired is an online vocational school where Provins trained in the fall of 2020 to be a sales development representative in the tech industry.  Like all other trainees, Provins had signed PreHired's standard contract, which he considered to be overreaching and unforgiving. Declaration of Matthew Provins, ¶17, submitted herewith.  PreHired's business model was training for free, but you signed a contract to pay in arrears after you obtained a job – 12.5% of your salary for up to eight years.  *See* Declaration of Charles Biggs ¶4, submitted herewith. PreHired promised trainees that they would earn an average salary of $69,000 in their first year after graduation, and claimed that most graduates would be hired in 12 weeks after graduating.

In 2021, Provins worked for PreHired as a consultant to its graduates, an experience that eventually led him to believe the company was unethical and motivated more by greed than by educational goals.  Provins felt that PreHired's training was substandard, that most graduates found it hard to find jobs, and that the company's 12.5% earnings cut left many graduates heavily in debt.  Provins believed that PreHired's training didn't live up to what it promised, and that its advertising was therefore false.  Provins Decl. ¶18.

This case targets Provins' speech posted online in connection with an issue under consideration by the Delaware Justice of the Peace Court, which handles money and debts, among other things.  It was in this court that Joshua Jordan, the founder and CEO of Plaintiff Prehired, filed the 290 collection cases over a period of thirteen days in January and February of 2022. Provins Decl. ¶12.  On February 18 and 19, 2022, Provins posted comments on LinkedIn and Slack about the collection cases and why PreHired filed them.  Provins' comments said PreHired was suing to collect an earnings cut for "predatory 'membership'" training that was a "systematic abuse" of trainees.  Those comments addressed a matter that has received widespread interest in California – unscrupulous online vocational schools and for-profit educational scams.

# ARGUMENT

## PREHIRED'S COMPLAINT SHOULD BE STRUCK PURSUANT TO THE CALIFORNIA ANTI-SLAPP STATUTE

PreHired carefully manages its public image.  It works assiduously to have any negative publicity suppressed.  Negative comments on websites and bulletin boards are monitored and reviewed.  *See* Provins Decl. ¶11.  This lawsuit is an effort by PreHired to stifle dissent.  There is no merit to its claims, but winning is not actually PreHired's goal.  Its goal is to bully Defendant Matthew Provins into silence.

## I.  History, Function, and Application of the Anti-SLAPP Statute.

By 1992, the California legislature had found that here had been "a disturbing increase in lawsuits brought primarily to chill the valid exercise" of free speech protected by the First Amendment and by California's constitutional free speech guarantees.  The legislature enacted the anti-SLAPP statute to encourage speech in "matters of public significance" by preventing the abusive use of defamation lawsuits to discourage people from speaking and writing on important public matters.  *See* Cal. Civ. Proc. Code § 425.16(a).  The courts construe the legislation broadly, as expressly required by the language of the statute.  *Id*. at § 425.16(a); *Briggs v. Eden Council for Hope & Opportunity*, 19 Cal. 4th 1106, 1121-1122, 81 Cal. Rptr. 2d 471, 969 P.2d 564 (1999); *see also Equilon Enterprises v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 61-62, 124 Cal. Rptr. 2d 507, 512-514, 52 P.3d 685 (2002).  "The point of the anti-SLAPP statute is that you have a right not to be dragged through the courts because you exercised your constitutional rights." *People ex rel. Lockyer v. Brar*, 9 Cal. Rptr. 3d 844, 115 Cal. App. 4th 1315 (Cal. App. 2004).

This case could not be more perfectly tailored to the statue.  PreHired seeks to stifle the speech of an individual who posted comments critical of the company.  Provins describes himself online as an "activist."  Provins Decl. ¶3.  When he found out that Jordan had sued 290 of the school's own graduates, Provins posted comments about how and why Jordan had sued to collect the company's 12.5% earnings cut.  The collective amount of the debt that PreHired

sought to recover was over $7 million.  Provins Decl. ¶14, and Ex B at p. 4.  Provins intended to warn individuals looking for online vocational training to be aware of the oppressive character of PreHired's standard contracts.  Provins Decl. ¶¶12,17.  PreHired's response was to sue Provins, even though the company had no hope of collecting damages, since it believed Provins to be "a twenty-one-year-old person who has no substantial assets to satisfy any possible judgment." Plaintiff's Mem. in Supp. of Mot. for TRO  ¶II(C).  But, then, damages were not as important to PreHired as muzzling Provins.

**A.  <u>The Two-Step Process of the Anti-SLAPP Statute.</u>**

There is a two-step process in applying the anti-SLAPP statute to a particular case.  The first prong of the process requires a finding that the defendant has made a threshold showing that the lawsuit the "arises from" defendant's exercise of his free speech rights under the U.S. and/or California constitutions.  If the court finds that such a showing has been made, then, under the second prong of the process, the burden shifts to the plaintiff to show it has a probability of prevailing on the claim.  If the plaintiff cannot show such a probability, the complaint is struck and the action is dismissed.  *Jarrow Formulas, Inc. v. LaMarche*, 31 Cal.4th 728, 3 Cal. Rptr. 3d 636, 639, 74 P.3d 737 (Cal. 2003).

**B.  <u>Application of the Three Relevant Subcategories.</u>**

There are four subcategories of speech that trigger the protection of the anti-SLAPP statute. Provins online posts are covered by three of those four categories of written postings made "in furtherance of" his exercise of his constitutional rights:

- <u>Online Comments on the 290 Collection Suits</u>.  '[A]ny written or oral statement . . . made in connection with an issue under consideration or review by a . . .  judicial body, or any other official procedure authorized by law."  Civ. Proc. Code § 425.16(e)(2).

- <u>Comments in a Public Forum</u>.  "[A]ny written or oral statement or writing made in a . . . public forum in connection with an issue of public interest."  Civ. Proc. Code § 425.16(e)(3).

- <u>Comments on an Issue of Public Interest</u>.  "[A]any other conduct in furtherance of the exercise of the constitutional right of free speech in connection with a public issue or an issue of public interest."  Civ. Proc. Code § 425.16(e)(4).

### 1.  <u>The Posts Concerned an Issue Under Consideration by a Judicial Body</u>.

The first of the categories listed above triggers anti-SLAPP protection for comments made "in connection with" an issue "under consideration or review" by "a judicial body, or any other official proceeding authorized by law."  The thing that prompted Provins to post comments about PreHired was the fact that CEO Jordan had filed 290 collection lawsuits with in the Delaware Justice of the Peace Court against the company's own training graduates.  Provins understood the background to these collection actions.  He went online to warn students looking at for-profit online tech vocational schools that they needed to look carefully at the contracts they sign, because they may otherwise wind up getting sued.  Provins Decl. ¶17.  Comments that Provins made *in connection with* the collection cases before the Delaware court were prima facie within the protection of Subsection (e)(2) of the anti-SLAPP statute – comments in connection with an issue under review by a court.  *See Takhar v. People ex rel. Feather River Air Quality Management District,* 27 Cal. App. 5th 15, 27-28, 237 Cal. Rptr. 3d 759 (3d Dist. 2018) (filing of enforcement action triggers Subsection (e)(2), as does "the expenditure of funds to initiate and prosecute that action"); *Kurz v. Syrus Systems, LLC,* 221 Cal. App. 4th 748, 759, 164 Cal Rptr. 3d 554 (6th Dist. 2013) (an unemployment insurance claim falls within Subsection (e)(2) because "it involves litigation for a claim for . . . benefits in an official proceeding authorized by law"); *ComputerXpress, Inc. v. Jackson,* 93 Cal. App. 4th 993, 1009, 113 Cal. Rptr. 2d 625, 640 (4th Dist. 2001)(filing of a complaint with the SEC qualifies as a statement before an official proceeding that triggers anti-SLAPP protection); *Church of Scientology v. Wollersheim*, 42 Cal. App. 4th 628, 647-648, 49 Cal. Rptr. 2d 620, 631-32 (2d Dist. 1996) (filing a complaint triggered the anti-SLAPP statute as containing a statement made in connection with an issue under consideration by a judicial body).

All of Provins' online comments were made *in connection with* the debt collection actions in Delaware, whether by addressing the collection actions directly,[2] or else indirectly – that is, by addressing the inadequacy of PreHired's training that failed to prepare graduates for the promised high-paying jobs,[3] that thereby subjected graduates to PreHired's 12.5% earnings cut,[4] by addressing the PreHired contracts from which the debts arose[5] and the fact the contracts left PreHired's graduates in debt and, thereby, led to the collection actions.[6]  The background of events that led to the collection suits are posted written statements made "in connection with" the collection complaints filed in Delaware, and therefore triggers as well being struck the Complaint under the anti-SLAPP statute.  *See, e.g., Takhar v. People ex rel. Feather River Air Quality Mgmt. Dist., supra*, 27 Cal. App. 5th at 28-29, 237 Cal. Rptr. 3d at 769-770.  There, the court found that an air quality management district investigation of the plaintiff, a farmer who was generating clouds of dust, contained written statements in furtherance of the defendant's right of free speech, and was therefore a proper subject for a motion to strike the plaintiff's complaint under Subsection (e)(2) of the ant-SLAPP statute.  If an *investigation* of a plaintiff's activity is protected by the statute, then surely there should be no doubt that Provins posted *speech* about the background of the collection suits should be protected as well.

"Case law establishes that communications that are intimately intertwined with, and preparatory to, the filing of judicial proceedings qualify as petitioning activity for the purpose of the anti- SLAPP statue." *Graham-Sult v. Clainos,* 738 F.3d 1131, 1142-1143 (9th Cir. 2013) (anti-SLAPP statue applied not only to claims based on representations made in writing to

---

[2] Complaint § 31(A,B) (PreHired graduates are unable to break their debt contract, so PreHired "is actively suing 290 graduates, many without jobs or making a fraction of what was promised").  Defendant refers to the Complaint where it accurately copied parts of Provins' online posts.

[3] Complaint § 31(A-D, F-I) (e.g., The training "turned out to be a complete joke," and left students "jobless;" "students at the time were required to submit 20+ applications a week almost aimlessly" and send "mostly ineffective" emails; "the training . . . consisted of 'submit more applications' and 'send more emails;'" etc.).

[4] Complaint § 31(A) (B). (for up to eight years PreHired graduates "forfeit 12.5%" of their earnings).

[5] Complaint § 31(B). (graduates make "a fraction of what was promised, because of their inability . . . to forfeit 12.5% of their wages.")

[6] Complaint § 31(A, B).

probate court, but also activities preparatory to filings in the court). "A statement is '*in connection with*' an issue under consideration by a court in a judicial proceeding ... if it relates to a substantive issue in the proceeding and is directed to a person having some interest in the proceeding."  Id. at 1143 (quoting *Fremont Reorg. Corp. v. Faigin,* 198 Cal. App. 4th 1153, 1167, 131 Cal. Rptr. 3d 478, 489 (2011) (emphasis added), in which statements made to an insurance commissioner about defendants' plan to auction artwork were found to be triggers of Subsection (e)(2)).  In this case, Provins posted background statements to the judicial collection cases intended to be read by persons he could expect would have an interest in the cases, namely PreHired graduates who could be sued.  *See also Crossroads Investors, L.P. v. Federal National Mortgage Association*, 13 Cal. App. 5TH 757, 778-799, 222 Cal. Rptr. 3d 1 (3d Dist. 2017) (indirect comments on a judicial proceeding trigger anti-SLAPP protection equally as direct comments.).

The next two subsections of the anti-SLAPP statute (addressed below) require an analysis of whether the speech was made in a public forum and/or addressed matters of public interest.  This section – dealing with an action against Provins' posts made "in connection with" an issue under consideration by a court – does not.  *Neville v. Chudacoff,* 160 Cal. App. 4th 1255, 1266, 73 Cal. Rptr. 3d 383 (2d Dist. 2008).  The issue under this section, Subdivision (e)(2), is only whether Provins online posts were made *in connection with* the claims filed in the Delaware collections court.  We submit that they were so made.

### 2.  Provins Posted in Comment Areas of Websites, Which are Public Forums.

Provins' posted comments also trigger anti-SLAPP protection under an entirely different provision of the statute – they were written statements in a *public forum* in connection with an issue of *public interest*.  Civ. Proc. Code § 425.16(e)(3)  The law is settled that statements posted on internet sites are posted in a public forum within the meaning of Subsection (e)(3).  *Barrett v. Rosenthal,* 40 Cal. 4th 33, 42 n.4, 51 Cal. Rptr. 3d 55, 146 P.3d 510 (2006) (websites that are accessible to the public are "public forums" for purposes of the anti-SLAPP statute); *Balla v. Hall,* 59 Cal. App. 5th 652, 673, 273 Call. Rptr. 3d 695 (4th Dist. 2021) (post on Facebook was

DEFENDANT'S MOTION TO STRIKE COMPLAINT AND MEMORANDUM

made on a "public forum" for purposes of Subsection (e)(3)); *Jackson v. Mayweather,* 10 Cal. App. 5th 1240, 1252, 217 Cal. Rptr. 3d 234 (2d Dist. 2017); (to the same effect, posts on Facebook and Instagram); *Summit Bank v. Rogers*, 206 Cal. App. 4th 669, 693, 142 Cal. Rptr. 3d 747 (6th Dist. 2012) (internet message boards are a "public forum"); *Wilbanks v. Wolk*, 121 Cal. App. 4th 883, 896-897, 17 Cal. Rptr. 3d 497 (1st Dist. 2004) (consumer advocate website was a "public forum" within the meaning of Subsection (e)(3)).

That leaves only the issue of whether Provins' online comments were posted "in connection with an issue of *public interest*."  Civ. Proc. Code § 425.16(e)(3).  The legislature amended the statute in 1979 to add another subsection (§ 425.16(e)(4)) that deals more generally with the requirement of speech in the "public interest." *See Wilson v. Cable News Network, Inc.*, 7 Cal.5th 871, 893 n.9, 444 P.3d 706, 249 Cal. Rptr. 3d 569, 584 n.9 (Cal. 2019).  The meaning of Subsection (3) is generally considered subsumed by the broader language Subdivision (4), (*see Briggs v. Eden Council for Hope and Opportunity*, 81 Cal. Rptr. 2d 471, 477-482, 19 Cal.4th 1106, 969 P.2d 564 (Cal. 1999)), so the "public interest" issue is discussed in this motion in only one section, immediately below.

### 3.     The Posts Were Speech in Furtherance of an Issue of Public Interest.

The definition of "public interest" has been broadly construed.  *See Damon v. Ocean Hills Journalism Club*, 85 Cal. App. 4th 468, 479, 102 Cal. Rptr. 2d 205, (4th Dist. 2000).  There can be no doubt that Provins' posts addressed a matter of serious "public interest" in California – the role of for-profit vocational schools and the battle to curb abuses of their enrolled students. According to PreHired itself, comments and posts have been viewed online more than 750,000 times (Complaint § 35) – so, if accurate, the fact that Provins' posts were viewed more than 750,000 times is certainly an indication that he tapped into matters of great public interest,

The Delaware Attorney General's office has launched an investigation of PreHired and its CEO, Joshua Jordan, in connection with the 290 collection suits filed by Jordan in that state.  In particular, Delaware is looking into "the income share agreements giving rise to PreHired's lawsuits, [and] its most immediate goal is preventing imminent harm to hundreds of consumers

who have already been sued."  Provins Decl. ¶14, Exhibit B, p. 1.  In addition to the collection suits, the investigation is focusing on "PreHired's claims and representations made to students and potential students."  *Id*. at p. 5.  No better evidence exists that Provins' posts concerned a matter of "*public interest*" than the fact that Delaware is investigating suspected misconduct of CEO Jordan and the possibility that PreHired has violated consumer protection laws in the course of dealing with students.  *Id*.; s*ee Muddy Waters, LLC v. Superior Court of San Bernardino Cnty*., 62 Cal. App. 5th 905, 918, 277 Cal. Rptr. 3d 204 (4th Dist. 2021) (reports published to highlight an investigation "are clearly made in connection with an issue of public interest"); *Schaffer v. City and County of San Francisco*, 168 Cal. App. 4th 992, 1003, 85 Cal. Rptr. 3d 880 (1st Dist. 2008) ("Thus, '[p]etitioners made a prima facie showing that the report and media statements related to an official investigation . . .  were made in a public forum, and involved an issue of public interest.")  Although the investigation was launched a few weeks after Provins posted his online comments, the Delaware Attorney General's office is looking into virtually the same potential PreHired abuses that were the subjects of Provins' online comments.

California has, over the recent years, attempted to find ways to reform the world of for-profit schools to eliminate student abuses.  *See* Coleman, Michael, "Chapter 585: A Renewed Effort to Restore Integrity to California's Vocational and Postsecondary Educational Institutions, 44 McGeorge L. Rev. 608 (2013).  As the author put it:

> Diploma mills endanger the public by allowing unqualified people to masqueraded as professionals. While many students who turn to diploma mills do so innocently, believing that the degree they seek is legitimate, many more do so with the understanding that they will receive an advanced diploma after competing virtually no course work. These diplomas allow 'graduates' to fool prospective employers and clients by creating an air of legitimacy and competence, even though the graduate is unqualified to perform the work.  Thus, because diploma mills confer a large number of degrees to people who knowingly wish to fool the public, it is unclear what, if any, effect Chapter 585 [of California Private Postsecondary Education Reform Act of 2009] will have in curbing the lucrative services diploma mills provide. *Id.* 617.

Much controversy about for-profit schools has been reported in the press.  See Declaration of Defendant's Attorney Nicholas J. Jollymore ¶5,8 Ex. C,F, submitted herewith.  The online press has picked up the PreHired story and criticized PreHired for filing the collection lawsuits in Delaware Courts.  Jollymore Decl. ¶3 Ex. A.  California courts have been faced with actions arising from for-profit school controversies.  E.g., *U.S.* v. *Corinthian Colleges*, 655 F.3d 984 (9th Cir. 2011) (for-profit Corinthian College violated federal law by paying bonuses to online recruiters to enroll students in for-profit vocational programs).  In *Ogdon v. Grand Canyon University,* No. 1:20-cv-00709-DAD-SK (E.D. Cal. 2022), the defendant for-profit school sought to restructure to avoid new regulations "to curb the worst abuses in for-profit schools," including informing students of the likelihood that they will gain employment after graduating.  *Id*. at 2. *See also Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 608 (9th Cir. 2014) (citing Government Accountability Office report on the for-profit education industry that purportedly found "a systematic practice of manipulative and deceptive recruitment practices within [the for-profit school] industry").

Probably the most notorious recent cases to reach the California courts involved Trump University.  A number of lawsuits alleged Trump University, which began online as a for-profit high-end vocational school, used false advertising to lure to lure students to free investor workshops, at which they were aggressively encouraged to invest in a "mentorship program" that promised a host of benefits which never materialized.  *See Low v. Trump Univ., LLC*, 881 F.3d 1111, 1113 (9th Cir. 2018); Makaeff v. Trump Univ., LLC, 715 F.3d 254, 276 (9th Cir. 2013).

The California Attorney General got into a dispute with the Trump administration over delays in implementing the Gainful Employment Rule, which required that educational programs at for-profit colleges produce graduates who earn enough to pay back the debt incurred from attending the program.  *See* Cal. Dept. of Justice, July 19, 2018, *Attorney General Becerra Denounces U.S. Department of Education's Third Delay of Gainful Employment Rule*, [Press Release]  https://oag.ca.gov/news/press-releases/attorney-general-becerra-denounces-us-

department-educations-third-delay-gainful.[7]  In October 2021, the Federal Trade Commission announced a crackdown on false claims by for-profit colleges.  Jollymore Decl. ¶9 Ex. G.

Provins' comments about PreHired dealt with many of the same abuses of for-profit vocational training that concerned regulators, educators and litigants in California.  Provins warned potential students to understand that PreHired would not train them be qualified for employment, and that they would be left deeply in debt and without jobs after graduation. *See statements copied in* Complaint § 31(A, D, F-H)  He warned of false advertisements, manipulative and deceptive recruitment practices, and benefits that never materialized.  *Id*. §§ 31(C, D, E)  Even though Provins' comments dealt with only one specific online vocational school, they dealt with matters of public interest not only in for-profit education repeatedly at issue in California, but also nationwide.  *See Wilbanks v. Wolk*, 121 Cal. App. 4th 883, 898-899, 17 Cal. Rptr. 3d 497, 506-507 (Cal. App. 2004) (comments on one business's practices are not necessarily a matter of public interest, but when the comments concern consumer information that affects a large number of persons are "generally viewed as information concerning a matter of public interest.")

Thus, Provins' online comments trigger both Subsection (e)(4), as well as (e)(3), of the anti-SLAPP statute because they dealt with a matter of public interest.

**C.  The Burden now Shifts to PreHired to Oppose the Anti-SLAPP Statute.**

At this point, the burden shifts to PreHired to establish a probability (not just a likelihood, but a *probability*) of prevailing on the merits of its Complaint.  *See Greater LA Agency on Deafness*

---

[7] The California AG lost that battle to the Trump administration, which repealed the Gainful Employment Rule completely.  See Program Integrity: Gainful Employment, 84 Fed. Reg. 126 (July 1, 2019) (to be codified at  34 C.F.R. 600); *but see also* Cal. Dept. of Justice, March 23, 2016, *Attorney General Kamala D. Harris Obtains $1.1 Billion Judgement Against Predatory For-Profit School Operator*, [Press Release] https://oag.ca.gov/news/press-releases/attorney-general-kamala-d-harris-obtains-11-billion-judgment-against-predatory ("For-profit schools have been accused of fraud, abuse, and predatory practices targeting the poor, veterans and minorities by offering expensive degrees that often fail to deliver promised skills and jobs.").

*v. Cable News Network, Inc.*, 862 F. Supp 2d 1021, 1025 (E.D. Cal. 2012); *Kyle v. Carmon,* 71 Cal. App. 4th 901, 907, 84 Cal. Rptr. 2d 303, 306 (3d Dept. 1999).  PreHired  must demonstrate that its claims are "supported by a prima facie showing *of facts to sustain a favorable judgment* if the evidence submitted by [it] is credited." *Taus v. Loftus*, 40 Cal. 4th 683, 54 Cal. Rptr. 3d 775, 798, 825 (2007) (emphasis added) (citation omitted).  Otherwise the court must strike the Complaint.  *See* Cal. Civ. Proc. Code § 425.16(b)(1).  For the reasons discussed below, PreHired cannot establish facts that would support a judgment in its favor.

As discussed above, PreHired cannot meet this burden for two reasons: (A) the statements in Provins' posts are protected as opinions on disclosed facts, and (B) PreHired cannot show the requisite degree of fault on Provins' part.

## II.  PreHired Cannot Show Probability of Prevailing on the Merits of Its Frist Claim – Defamation by Trade Libel.

In its reply papers in support of its TRO motion, PreHired asserts that this is an "unfair trade advantage" case, "not a simple free speech case."  TRO Reply Mem. § IV.  That is not actually true.  "Although the limitations that define the First Amendment's zone of protection for the press were established in defamation actions, they are not peculiar to such actions but apply to all claims whose gravamen is the alleged injurious falsehood of a statement . . . . [C]onstitutional protection does not depend on the label given the stated cause of action." Blatty v. New York Times Co., 42 Cal.3d 1033, 1042, 232 Cal. Rptr. 542, 547 (Cal. 1986) (citations omitted).

### A.  The Posts are Opinions Protected by the First Amendment or are Otherwise Non-Actionable.

PreHired's Complaint alleges that eleven phrases posted by Provins are defamatory as trade libel.  *See* Complaint at § 31.[8]  (Two phrases are alleged intentional interreference with business

---

[8] A claim of defamation must be pleaded *in hac verba*, or "in these [particular] words."  Wiggins v. District Cablevision, Inc., 853 F. Supp. 484, 494 (D. D.C. 1994); *see also* King v. Meek, 1:14-cv-02079-AWI-GSA at p. 2 (E.D. Cal. 2015).  Although PreHired copied all language of Provins' posts, it pleaded only those alleged defamatory words in the eleven subsections of § 31 of the Complaint.  The words that give rise to the claim for intentional interference with business relationships are two excerpts from Provins' posts copied in Complaint §§ 44-

relationships.  Compl. §§ 44-45.)  Those posts fall into three categories: rhetorical hyperbole, simple opinion, and disclosed facts.  *See* Jollymore Decl. ¶10 Ex. H.  Among the words alleged to be actionable, it is Defendant's position that 177 (or about 50%) are opinions – either hyperbole or simple opinions *See* Jollymore Decl. ¶11 Ex. I.  It is for the Court to decide whether these 177 words are in fact, as we assert, constitutionally protected opinions, by applying the "totality of the circumstances" test.  The court first looks to the broader context in which the language appears, then its specific context, and finally the nature of the language itself.  *Knievel v. ESPN*, 393 F.3d 1068, 1080 (9th Cir. 2005).  While LinkedIn is a professional network and Slack is a workplace communications tool, many users of both applications seek out their comment sections, expecting to find less decorous materials there.

Provins posted all of his alleged defamatory statements on LinkedIn and Slack, both business networking sites that host robust exchanges of user comments.  See Provins Decl. ¶23.  Users of such sites expect to see comments critical of many business enterprises in such comments, with frequent use of hyperbolic language statements of outrage.  Given the nature of comment sections of these sites, it is important consider whether comments use "epithets, fiery rhetoric or hyperbole, [in which case the] language which generally might be considered as statements of fact may well assume the character of statements of opinion."  *See Global Telemedia Intern., Inc. v. Doe 1*, 132 F. Supp 2d 1261, 1267 (C.D. Cal. 2001) (citation omitted).  Comments posted online are often "full of hyperbole, invective, shorth-hand phrases and language" not usually found in "corporate press releases or SEC filings."  Id., at 1276 (dismissing defamation complaints against online posts on the financial website, Raging Bull, as protected opinion).  "Online blogs and message boards are places where readers expect to see strongly worded rather than objective facts."  *Summit Bank v. Rogers*, 306 Cal. App. 4th 669, 142 Cal. Rptr. 3d 40, 60 (Cal App. 2021).  *See, e.g.,* Jollymore Decl. ¶¶4,6,7 Ex. B,D,E (Social media, including

---

45.  All thirteen statements are analyzed together for the defenses to defamation set out in § II of this Memo.  The statements in Complaint § 44 and 45 are also separately analyzed in in § III of this Memo.

LinkedIn, pick up unverified claims from more obscure sites; LinkedIn is a "hellhole" of scurrilous posts; negative posts on Facebook Business outnumber positive posts by 2 to 1).

1. **Rhetorical Hyperbole.**  Many of Provins' posted statements are embellished and exaggerated in a way that no reader would understand to be actual factual statements, but rather to be rhetorical hyperbole and vigorous epithets that are protected opinion under the First Amendment.  *See Underwager v. Channel 9 Australia*, 69 F.3d 361, 367 (9th Cir. 1995). Language proclaiming that PreHired acts out its own "**greed**," has "**scammed**" people, and its training is "**a complete joke**," for example (Compl. §§ 31(J,K,F)) is language recognized as protected hyperbole.  *Ferlauto v. Hamsher*, 88 Cal. Rptr. 2d 843, 847, 974 Cal. App. 4th 1394 (2d Dist. 1999) (the "meanest, **greediest**, low-blowing motherfuckers" found to be rhetorical hyperbole); *Summit Bank v. Rogers*, 206 Cal. App.4th 669, 142 Cal. Rptr. 3d 40, 63 (1st Dist. 2012) (people "duped into this stock realize the *scam* they were coaxed into, . . . there will be hell to pay" is mere rhetorical hyperbole); Ferlauto v. Hamsher, 88 Cal. Rptr. 2d 843, 850, 74 Cal. App. 4th 1394 (2d Dist. 1999) (protecting the judge thought their motion was a *joke*) (emphasis added).  About 12% (483words) of the alleged defamatory posts are protected hyperbole.  *See* Jollymore Decl. ¶¶ 10, Ex. H (collecting and classifying the words).

2. **Common Opinions.**  The remainder of Provins' posts are protected as common, ordinary opinions (38% of the alleged defamatory statements, *see* Jollymore Decl. ¶12 Ex. J).  Though they are less facially emphatic than hyperbole, they are enjoy full protection under the First Amendment as words any reasonable reader would recognize as conjecture, personal judgment and opinion -- not as statements of fact, especially given the context of the statements on very active networking sites.  Analogies are, for example, statements that directed viewers not to watch a TV show were held to be opinions. *Films of Distinction v. Allegro Film Productions*, 12 F. Supp 2d 1068,1703 (C.D. Cal. 1998) (E.g., "You shouldn't watch this," "I blocked that channel"); *see Cook, Perkiss and Liehe, Inc. v. Northern California Collection Service Inc*., 911 F.2d 242, 234 (9th Cir. 1990) (statements that defendant offers the same legal services as plaintiff, but at a lower cost, is *puffery* protected as opinion).  Provins laments online that

PreHired had changed, and not for the better, and he posted "calls to action" urging readers to fight back, expressing sympathy for students who could not manage to forfeit their wages, how PreHired had lost its way, how its instructors now appeared to have little or no sales background, and how students were required to send out applications almost aimlessly as well as emails that were mostly ineffective.  *See* Jollymore Decl. ¶15 Ex. M and Provins Decl. ¶¶17,18,23.   These statements that recognized immediately as opinion, especially the online tech world.  *See Edwards v. Hall,* 234 Cal. App. 3d 886, 285 Cal. Rptr. 810, 904 (2d Dist. 1992) ("For words to be defamatory, they must be understood in a defamatory sense.  Where the language of the statement is 'cautiously phrased in terms of apparency,' the statement is less likely to be reasonably understood as a statement of fact rather than opinion.").

3.  **Disclosed Facts.**  That leaves the other 50% (178 words) of Provins' comments that are the disclosed facts on which the protected opinions are based.  Many of the facts have been admitted by PreHired, based on documents attached to the Complaint, or in promotional materials on PreHired's own website (Jollymore Decl. ¶13(a), and some are protected by the litigation privilege.  *See id.* ¶13(b).  Those factual statements are either not actionable or are privileged.   Other factual statements recount things Provins himself did.  *Id.* ¶13(e).  For those, PreHired is required to establish, with admissible evidence, that it is probable that these things are false – i.e., that Provins did not, in fact, do them.  PreHired also has a burden to produce evidence that comments Provins made about *some* PreHired graduates are false and defamatory.  *Id.* ¶13(c).  An example are the comments that PreHired "often" leaves graduates "jobless."  *Id.* It is not sufficient for PreHired to introduce evidence that many graduates obtain jobs – it must demonstrate that *virtually none* were left jobless (because Provins knew many were left jobless, and he so posted).  And, the last category of facts are statements that are simply not defamatory, which are most of the factual statements. *Id.* ¶13(f)

Unless PreHired can produce evidence that these facts are false and defamatory, which we submit it cannot, the Complaint must be struck under the anti-SLAPP statute

**B.  PreHired Cannot Show the Requisite Degree of Fault.**

Under the First Amendment gloss of common law libel, the federal courts have created protections for publishers to promote robust debate to preserve democratic values.  The principal protection is the rule of actual malice adopted by *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964).  Actual malice requires showing that the publisher was *at fault* because it knew the published statements were false, or that it recklessly published the statements not knowing if they were false or not.

The actual malice rule has been extended to other circumstances since it became a constitutional standard in 1964.  In California, it has been applied to trade libel.  Before a plaintiff can recover damages for trade libel, it must prove by "clear and convincing evidence" that whoever published the alleged libel either knew it was false or acted in reckless disregard of falsity.  *Melaleuca, Inc. v. Clark*, 78 Cal. Rptr. 2d 627, 638, 66 Cal. App. 4th 1344 (Cal. App. 1998); *see also Exeltis USA Inc. v. First Databank, Inc*., 520 F. Supp 3d 1225, 1035 (N.D. Cal. 2021).

The posts at issue in this case were all based on Provins first-hand personal knowledge.  Provins became very familiar with PreHired because he took PreHired's training course in 2020, and he later worked as a contractor counseling PreHired graduates who had defaulted on their 12.5% salary cut payments, helping them look for employment. Provins Decl. ¶8.  Each of his posts were based on his knowledge of the operations and business of PreHired.  *See* Provins Decl. ¶¶19,20,23.

In his informal work with other PreHired graduates, Provins found that others had the same disappointing experiences as Provins had at PreHired.  Their stories corroborated Provins' personal knowledge, and he also relied on them to confirm the accuracy of his online posts. Provins Decl. ¶¶19-20.  A number of those PreHired alumni have submitted declarations in support of Provins' motion in this case.  *See* Declarations of Charles Biggs, Diana Lazarenko, Jordan Wilhere, submitted herewith.  Biggs, for example, found PreHired's training insufficient to get a tech job ( Biggs Decl. ¶3), and PreHired's staff pressured him to pay the company money he did not owe  *Id.* ¶4.  Lazarenko felt "duped" by the PreHired contracts (Lazarenko Decl. ¶4),

and she learned that PreHired paid people to take down negative online reviews.  *Id. ¶¶1,7.*
Wilhere found PreHired's online training rambling and outdated (Wilhere Decl. ¶4), that
PreHired's job search training was "just bad" (*Id.* ¶4), and that "[m]ost people in the software
service industry got turned off the moment I said I took the PreHired training."  *Id.* ¶7.  Provins'
work with these PreHired alumni just confirmed to him that his understanding of the company,
and the facts and opinions he posted online, were fair and accurate.  Provins Decl. ¶20.  Given
such corroboration, it is not conceivable that Provins acted with actual malice.

In order to prove actual malice, PreHired would be required to show "by clear and
convincing evidence: that Provins was reckless his comments online.  Provins has declared that
he believed all facts his online comments were true, based upon his own personal knowledge,
and that he had no doubt about their truth or accuracy.  Provins Decl. ¶¶19,20.  Although
PreHired alleged that Provins acted recklessly, (Complaint § 30) it must do more at this stage.
PreHired must produce evidence indicating a probability it can prove that Provins knew his
comments were false or posted them without that knowledge.  That it cannot do.

If this were an ordinary defamation case, PreHired would still have to prove fault – most
likely that Provins negligently posted his alleged defamatory statements online.  *See Khawar
v .Globe International, Inc.*, 79 Cal. Rptr. 2d 178, 190, 19 Cal.4th 1073A, 19 Cal. 4th 254, 965
P.2d 695, 190 (1998), (*quoting Brown v. Kelly Broadcasting Co.*, 48 Cal.3d 711, 742, 257 Cal.
Rptr. 708, 771 P.2d 406 (1989)).  Even negligence is a standard that PreHired cannot meet, since
there is no evidence that Provins failed to act with due care in determining the truth of his
statements.  They were based on his own experience personal knowledge of the Plaintiff's
business practices.

For that additional reason, the Complaint in this case should be struck pursuant to
California's anti-SLAPP statute.

## III.   <u>PreHired Cannot Prove a Probability of Prevailing on its Second Claim -- Intentional Interference with Business Relationships.</u>

PreHired's claim of intentional interference with business relationships (referred to in this section as an "IIER" claim) cannot either stand because it is derivative of the trade libel claim – that is, if PreHired's defamation claim does not stand, then the IIBR claim cannot stand.  And. at any rate, PreHired has not properly pleaded the IIBR claim, and it ignores the privilege that protects Provins.

### A.  PreHired's Intentional Interference Claim Fails Because it is Derivative.

Courts in California routinely dismiss intentional interference claims, such as PreHired's IIER claim, if those claims are *derived from* a claim of defamation.  *See, e.g., Gardner v. Martino*, 563 F.3d 981, 992 (9th Cir. 2009) ("Appellants cannot state a clam for intentional interference with economic relations . . . because protected speech cannot form a basis such a claim"); *Med. Lab Mgmt. Consultants* v. *ABC*, 306 F.3d 806, 821 (9th Cir. 2002) (holding that tortious interference causes of action are subject to First Amendment requirements); *Rumble, Inc.* v. *Daily Mail Y Gen. Trust PLC*, 459 F. Supp.3d 1294, 1301 (C.D. CA 2020) (trade libel dismissed because the alleged libelous statement was innocuous, so a claim for intentional interference with a prospective business advantage based on the same statement also must be dismissed); *Resolute Forest Prods., Inc.* v. *Greenpeace Int'l,* 302 F. Supp 3d 1005, 1016 (N.D. Cal. 2017) (dismissing a claim for interference with prospective business relationships on ground that it is subject to the same defenses for defamation and First Amendment protection); *Contemporary Services Corp*. v. *Staff Pro*, 61 Cal. Rptr. 3d 434, 442, 152 Cal. App. 4th 1043 (Cal. App. 2007) (dismissing "[p]laintiffs' [claims] for intentional and negligent interference with prospective economic advantage, [since they] were entirely based on the allegations of the defamation claim and other related claims.").

When a libel case is dismissed, an IIER claim based on the same alleged defamatory statements must also be dismissed.  "For purposes of demurrer, the majority have not identified any sound analytical basis to treat such ancillary claims differently than [plaintiff's] libel claim..." *Sheppard v. Freeman*, 79 Cal. Rptr. 2d 13, 20, 67 Cal. App. 4th 339, 350 (4th Dist. 1998) (Kremer, J., concurring in part and dissenting in part).

### 1.   PreHired Cannot Show Provins Engaged in Intentional "Wrongful Conduct" Designed to Disrupt Business Relationships.

One of the principal reasons why courts dismiss such IIER claims as derivative is because the defendant's acts allegedly committed with intent to disrupt defendant's business relationships must be *wrongful* acts.  *See Golden Eagle Land Inv., L.P. v. Rancho Santa Fe Ass'n,* 227 Cal. Rptr. 3d 903, 928, 19 Cal. App. 5th 399, 430 (Cal. App. 2018).  The defendant's conduct must be "*wrongful* by some legal measure other than the fact of the interference itself."  *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1153-1154, 131 Cal. Rptr. 2d 29, 63 P.3d 937 (Cal. 2003) (emphasis added; citation omitted).  PreHired cannot establish that Provins' acts were wrongful.

### 2.   Conduct Protected by the First Amendment Cannot be "Wrongful".

PreHired has dismisses as irrelevant the application of the First Amendment, ignoring the fact that the only alleged offense that  Provins is accused of committing is publishing speech. Compl. §§ 17-23.  Provins' posts, PreHired says, "are not constitutionally protected statements." TRO Reply Mem. § III.

The only wrongful act that PreHired might put forward to support its IIER claim is defamation, which the Complaint vaguely pleads is the underlying basis of the claim.  *See* Compl. § 46.  But, since Provins' online posts were protected opinions posted without the requisite fault (Sections II(A,B), *supra*), PreHired cannot establish that the alleged defamation was the predicate wrongful act that would support its IIER claim.  *See Deerpoint Grp., Inc. v. Agrigenix, LLC*, 393 F. Supp 3d 968,-986-989 (E.D. Cal. 2019)  (opinions and puffery are not the kind of actionable defamation that serves as a wrongful act for a claim of intentional interference with prospective economic advantage); *Contemporary Services Corp*. v. *Staff Pro*, 61 Cal. Rptr. 3d 434, 152 Cal. App. 4th 1043 (Cal. App. 2007) ("Plaintiffs' [claims] for intentional . . . interference with prospective economic advantage [failed because they] were entirely based on the allegations of the defamation claim" that had been struck as protected opinion).

For this reason, as well, the Complaint should be struck pursuant to the anti-SLAPP statute

**B.   PreHired Cannot Produced Evidence of Key Elements of its Claim of Intentional Interference With Business Relationships.**

PreHired cannot produce evidence to establish three key elements of its IIER claim: that (i) Provins knew PreHired had a business relationship with a specific third party, (ii)  PreHired suffered economic harm proximately caused by Provins, and (iii) Provins improperly competed with PreHired.  *See Golden Eagle Land Inv., L.P. v. Rancho Santa Fe Ass'n*, 227 Cal. Rptr.3d 903, 928-928, 19 Cal. App. 5th 399, 429-430 (Cal. App. 2018).

**1.   Provins Knew Of No Disrupted Business Relationships That Caused Loss To PreHired.**

The rather elusively pleaded IIER claim, based only upon information and belief, identifies no businesses that walked away from PreHired, resulting in lost revenue.  *See* Complaint § 42. In the two affidavits that PreHired founder and CEO Joshua Jordan has submitted in this case, he provides a few details of alleged lost revenue -- one lost "contract  . . . worth $20,000," and another lost contract "expected to provide $2 million in revenue to PreHired," which, Jordan disclosed in his second affidavit, was a contract with the financial services company New Epona, Inc. that resulted in a loss of $1.15 million (rather than the higher original estimated loss of $2 million).  First Jordan Affid. ¶¶28, 31; Second Jordan Affid. In Reply to the TRO Motion ¶¶21,23,24.  In his own declaration, however, Provins says he never knew anything about these alleged debts, and he had never even heard of New Epona on or before the time he filed his online posts.  Provins Decl. ¶22.

Merely mentioning alleged lost revenues is insufficient.  PreHired is required to prove Provins *knew* of the businesses that walked away from Prehired. "In order to plead the elements of intentional interference with prospective economic advantage, plaintiff must *specifically allege* that it has existing business *with a particular third party* which will be damaged by defendant's acts.  The pleading *must be specific*, and *plaintiff cannot speculate* that there are customers out there who will be deterred from doing business with plaintiff because of defendant's conduct." *Muddy Waters, LLC* v. *Superior Court of San Bernardino City*, 62 Cal. App. 5th 905, 924, 277 Cal. Rptr. 3de 204, 220 (4th Dist. 2021).  So too must plaintiff submit

specific evidence, not vague speculation, that Provins' online comments resulted in particular third-party customers fleeing Prehired, leading to collapsed revenues, in order to prove its IIER claim.

**2.  PreHired is Unlikely to Prove Provins Proximately Caused Economic Harm.**

The Complaint alleges that Provins' online posts proximately caused PreHired "to suffer general and special damages."  Compl. § 47.  CEO Joshua Jordan attests that "[t]he general counsel of New Epona, Inc. stated that the statements of Provins were the direct reason the company . . .  proceeded to terminate" contracts allegedly worth $1.15 million.  On information and belief, the general counsel of that company would not, in fact, thus testify.  *See* Jollymore Decl. ¶¶16-18.  Since PreHired has failed to produce any other evidence of special damages, the Complaint for intentional interference should be struck.

**C.  Provins is Allowed to Compete with PreHired Under the Competition Privilege.**

In its TRO Reply papers, PreHired took a new tack.  In support of its IIER claim, PreHired expresses outrage at Provins for attempting to steal PreHired's business.  TRO Reply Mem. §§ II, IV.  PreHired charges that months after he finished the PreHired training course in 2022, Provins joined a direct competitor of PreHired, launched a plan to defame PreHired until it went out of business, and then to take PreHired's customers for himself.  TRO Reply Mem. §§ I, II, IV.

Even assuming Provins did these things (and he did not), he would be legally entitled to compete forcefully and aggressively with PreHired without crossing the line into intentional interference with business relationships.  Free competition is privileged, and it allows a competitor to divert business to himself as long as he does not engage in unlawful or illegitimate means.  *San Francisco Design Center Associates v. Portman Companies*, 41 Cal. App. 4th 716, 38 Cal. Rptr. 2d 270, 716 (1ˢᵗ Dist. 1995); *Tri-Growth Centre City, Ltd. v. Silldorf, Burdman, Duignan & Eisenberg*, 216 Cal. App. 3d 1139, 1153, 265 Cal. Rptr. 330, 337 (4th Dist. 1989). We live in a competitive economy where businesses fight for economic advantage.  Competition

so fierce that even ruins a rival, is ordinarily not actionable.  *See PMC, Inc. v. Saban Entertainment, Inc*., 52 Cal. Rptr. 2d 877, 892, 45 Cal. App. 4th 579 (Cal. App. 1996).

    For all its bluster, PreHired cannot establish that Provins intentionally interfered with PreHired's business relationships by competition.  These new attacks are no reason to deny this anti-SLAPP motion.

### IV.   <u>Conclusion</u>.

    For these reasons, Defendant respectfully asks the Court to dismiss Plaintiff's Complaint and award fees under California's anti-SLAPP statute.

Dated: April 11, 2022                    Respectfully submitted,

                                       JOLLYMORE LAW OFFICE, P.C.

                                       By: _____/s/ *Nicholas J. Jollymore*_____.
                                       Nicholas J. Jollymore

                                       Attorney for Defendant
                                       MATTHEW PROVINS

DEFENDANT'S MOTION TO STRIKE COMPLAINT AND MEMORANDUM