Nicholas J. Jollymore (State Bar No. 291321)
JOLLYMORE LAW OFFICE, P.C.
425 First Street, no. 3004
San Francisco, California 94105
Telephone:     (415) 829-8238
Email:        nicholas@jollymorelaw.com

Attorney for Defendant
MATTHEW PROVINS

## IN THE UNITED STATES DISTRICT COURT
## THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PREHIRED, LLC,<br><br>          Plaintiff,<br><br>vs.<br><br><br>MATTHEW PROVINS,<br><br>          Defendant | Case No.: 2:22-00384-TLN-AC<br><br><br><br><br><br>**ATTORNEY DECLARATION IN SUPPORT OF DEFENDANT'S MOTION TO STRIKE COMPLAINT UNDER CALIFORNIA'S ANTI-SLAPP STATUTE** |

I, Nicholas J. Jollymore, declare as follows:

1.  I an attorney admitted to practice law in the State of California and before this Court.  I am counsel of record in this action for the Defendant Matthew Provins, and I make this declaration in support of Defendant's motion to strike the Complaint pursuant to Cal. Civ. Proc. Code § 425.16, the California anti-SLAPP statute.

2.  I have personal knowledge of all facts stated in this declaration, and if called to testify, I could and would testify competently thereto.

3.  Attached as Exhibit A is a true and correct copy of Kaufman, Ben, "A Predatory School is Dragging 290 Defrauded Students into Court in the Latest Example of the Exploitative State of

the Income Share Agreement Market, Student Borrower Protection Center, February 28, 2022, which I caused to be downloaded from the publicly accessible website, https://protectborrowers.org/a-predatory-school-is-dragging-290-defrauded-students-into-court-in-the-latest-example-of-the-exploitative-state-of-the-income-share-agreement-market/, on April 9, 2022.

4.   Attached as Exhibit B is a true and correct copy of Aaron Krolik and Kashmir Hill, "The Slander Industry," The New York Times, April 24, 2021, which I caused to be downloaded from the publicly accessible website, https://www.nytimes.com/interactive/2021/04/24/technology/online-slander-websites.html, on April 9, 2022 (LinkedIn and other social media sites regularly pick up unverified claims from more obscure sites).

5.   Attached as Exhibit C is a true and correct copy of Lewin, Tamar, "For-Profit Colleges Face a Loan Revolt by Thousands Claiming Trickery," The New York Times, May 3, 2015, which I caused to be downloaded from the publicly accessible website, https://www.nytimes.com/2015/05/04/education/for-profit-colleges-face-a-loan-strike-by-thousands-claiming-trickery.html?searchResultPosition=6, on April 11, 2022

6.   Attached as Exhibit D is a true and correct copy of Matthew Hughs, "LinkedIn is a hellhole and this Twitter account proves it," June 22, 2018, which I caused to be downloaded from the publicly accessible website, , https://thenextweb.com/news/linkedin-is-a-hellhole-and-this-twitter-account-proves-it, on April 9, 2022. (various scurrilous posts on LinkedIn described).

7.   Attached as Exhibit E is a true and correct copy of Mochen Yang, Yuqing Ren, and Gediminas Adomavicius, 2019, Understanding User-Generated Content and Customer Engagement on Facebook Business Pages, *Information Systems Research*, Vol. 30, No. 30, which I caused to be downloaded from the publicly accessible website, https://www.researchgate.net/publication/335486339_Understanding_User-Generated_Content_and_Customer_Engagement_on_Facebook_Business_Pages, on April 9, 2022. (negative posts on Facebook Business outweigh positive posts by 2 to 1).

8.   Attached as Exhibit F is a true and correct copy of Winkley, Lindsay, "A3 charter school fraud ringleader sentenced to 4 years in prison, fined $18.75 million," Los Angeles Times, Sept. 11, 2021, which I caused to be downloaded from the publicly accessible website, , https://www.latimes.com/california/story/2021-09-11/a3-charter-school-fraud-ringleader-sentenced-to-4-years-in-prison-fined-18-75-million, on April 9, 2022

9.   Attached as Exhibit G is a true and correct copy of Federal Trade Commission, December 6, 2021, *FTC Targets False Claims by For-Profit Colleges,* [Press Release], which I caused to be downloaded from the publicly accessible website, https://www.ftc.gov/news-events/news/press-releases/2021/10/ftc-targets-false-claims-profit-colleges, on April 9, 2022.

10.  Attached as Exhibit H is a true, correct and substantially accurate list of statements from the online posts of Matthew Provins that are at issue in this action, which I accurately copied from §§ 31,44,45 of the Complaint and highlighted to show which statements Defendant hereby asserts are in the categories of *rhetorical hyperbole, simple opinion, and disclosed facts*.  The exhibit shows that 12% of the words alleged to be actionable are rhetorical hyperbole, 38% are simple opinions, and 50% are disclosed facts.

11.  Attached as Exhibit I is a true, correct and substantially accurate list of statements from the online posts of Matthew Provins that are at issue in this action, which I accurately copied from § 31 of the Complaint and highlighted to show which statements Defendant hereby asserts are in the categories of *rhetorical hyperbole and simple opinion*.  The exhibit shows about 50% of the statements are opinion (combined hyperbole and simple opinion).

12.  Attached as Exhibit J is a true, correct and substantially accurate list of statements from the online posts of Matthew Provins that are at issue in this action, which I accurately copied from § 31 of the Complaint and highlighted to show which statements Defendant hereby asserts are *rhetorical hyperbole*

13.  Attached as Exhibit K is a true, correct and substantially accurate list of statements from the online posts of Matthew Provins that are at issue in this action, accurately copied from the

Complaint and highlighted to show which statements Defendant asserts are in the categories of _simple opinion_.  The exhibit shows about 38% of the statements are simple opinion.

14. Similarly, Exhibit L is a true, correct and substantially accurate list of all words in the Complaint that are facts.  About 50% of the words that PreHired alleges are actionable (either because they are defamatory, or because they allegedly intentionally interfere with business relationships.  Plaintiff cannot prove that these facts are actionable, for the following reasons:

a. Admissions.  PreHired admits it leaves graduates "in debt . . . and unable to break their $30,000 debt contract" (Compl. §31(A)) in the ISA attached as Exhibit A to the Complaint (see p. 7).  It admits that it instructs on a "prerecorded video series" (Compl §31(B) on its website, " https://www.prehired.io/faq, "Our core training is video-based, and you can then schedule live mentoring at your convenience."

b. Litigation Privilege.  Provins' posts about PreHired's 290 collection assets (Compl. §31()) are absolutely privileged under California's litigation privilege.  _Johnson v. JP Morgan Chase Bank_, 536 F.Supp.2d 1207, 1211 (E.D. Cal. 2008).

c. They Cannot Prove Falsity of Statements that "Some" or "Many" Graduates Are Jobless. In theory, PreHired would have to prove that _all graduates_ are employed to establish that Provins' posts that Prehired often leaves its graduates jobless, or many graduates left without jobs or making a fraction of what was promised. (Compl. §§ 31(A,B))

d. False Advertising.  PreHired's advertising that its graduates are hired an average of 12 weeks and earn an average of $69,000 a year overstated what Provins observed among graduates he counseled. (See Provins Decl. 18, Ex. E), many who were unemployed and earned nothing close to $60,000. He concluded such advertising was false (Compl. § 31(C)).  Provins Decl. ¶18, Ex. E.

e. Provins Experience at PreHired.  Most of the facts alleged in the Complaint to be actionable were based on Provins own experience during and after his training at PreHired (e.g., the course took him 7-8 days; students were forced to submit 20+ job applications a week; he interviewed for three months after graduating, etc.).  Complaint at ¶¶31(F,G,I).  PreHired needs to submit evidence that these facts are false, even though Provins would testify they are 100% accurate.

f. Not Defamatory.  The remaining facts swept up into the allegations in the Complaint are simply not defamatory – even if false, they do not hold PreHired up to shame, contempt or ridicule. (e.g., instructors had little or no sales background, I moved into career search within 7-8 days, Provins recounted what a Director of Sales told him during a job interview, etc. Complaint at ¶¶31(B,F,I).

15. Attached as Exhibit M is a true, correct and substantially accurate list of statements from the online posts of Matthew Provins that are at issue in this action, which I accurately copied from §§ 31(B,D,G,K) of the Complaint and highlighted to show which statements Defendant hereby asserts are _opinions urging readers to fight back, to ask Josh Jordan for contract_

*withdrawal, comments about students who could not forfeit their wages, instructors who appeared to have little or no sales background, how there was no longer a path to succeed at PreHired, how students were required to send out applications almost aimlessly and that emails were mostly ineffective*.

16. Joshua Jordan, the founder and CEO of PreHired, attested in this case that a third party, New Epona, Inc., doing business as Blair ("Blair"), terminated two lucrative agreements with PreHired on March 7, 2022, because of the comments that Provins posted on LinkedIn and Slack on February 18 and 19, 2022.  (*See* Reply Affidavit of Joshua Jordan, April 5, 2022, Submitted in Support of PreHired's TRO Motion ¶¶21-23)  Presumably PreHired will rely on Jordan's testimony to prove that Provins' online comments proximately caused material economic harm to PreHired, one of the elements of PreHired's second claim in this case, intentional interference with business relationships.

17. Before the contracts with PreHired were terminated, Blair had both serviced PreHired's contracts with its students under a servicing agreement and also purchased PreHired's contracts through a separate financing agreement. Upon information and belief after speaking with the General Counsel of Blair, although Blair was aware of Provins' online comments, Blair cancelled the agreements with PreHired for a long list of reasons.  In fact, the comments posted by Provins only served to as further corroboration of the findings of the separate internal investigation that Blair had previously conducted and data gathering into PreHired's operations, performance, and reputation.

18. Jordan swore in his affidavit that the General Counsel of Blair said "that the statements of Provins were the *direct reason* the company delayed payment to PreHired and proceeded to terminate . . .  contracts [worth $1.15 million to PreHired] on March 7th, 2022."  Jordan Aff. ¶23 (emphasis added).  Upon information and belief, the General Counsel's testimony would not support Jordan's sworn statement.

I declare under penalty of perjury that the foregoing facts are true and correct
Dated this 11st day of April, 2022.

__/s/ Nicholas J. Jollymore__

Nicholas J. Jollymore
425 1st St., No. 3004, San Francisco, CA 94105
(415) 829-8238