UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PREHIRED, LLC,<br><br>  Plaintiff,<br><br>  v.<br><br>MATTHEW PROVINS,<br><br>  Defendant. | No. 2:22-cv-00384-DAD-AC<br><br>ORDER GRANTING DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S COMPLAINT<br><br>(Doc. No. 28) |

This matter is before the court on defendant's motion to strike plaintiff's complaint pursuant to California's anti-SLAPP statute. (Doc. No. 28.) The pending motion was taken under submission by the previously assigned district judge on May 25, 2022.[1] (Doc. No. 51.) For the reasons explained below, the court will grant defendant's motion to strike the complaint.

**BACKGROUND**

In its complaint, plaintiff alleges as follows. Plaintiff Prehired, LLC ("Prehired") is a company that trains and mentors its clients, including defendant Matthew Provins, regarding "skills and techniques that are required or helpful in order for them to seek and obtain employment in the software sales industry." (Doc. No. 1 at ¶¶ 1, 6.) Plaintiff markets its services through social media websites such as LinkedIn. (*Id.* at ¶ 7.) Plaintiff charges a fee for its

---

[1] On August 25, 2022, this case was reassigned to the undersigned. (Doc. No. 52.)

1

services, and plaintiff and its clients sign written agreements before any such services are provided. (*Id.* at ¶¶ 8–9.) These written membership agreements describe the services offered by plaintiff, the price of those services, the method and schedule of payments for those services, and other terms and conditions. (*Id.* at ¶ 10.)

On October 14, 2020, plaintiff and defendant entered into a membership agreement. (*Id.* at ¶ 11.) Pursuant to that agreement, defendant completed a mentoring and training program provided by plaintiff. (*Id.* at ¶ 12.) Subsequently, plaintiff and defendant engaged in negotiations concerning the possibility of defendant assisting plaintiff in supporting and training plaintiff's clients. (*Id.* at ¶ 13.) Pursuant to those discussions, plaintiff, defendant, and defendant's company MTT Training, LLC ("MTT") executed an agreement titled "MTT Partner Service Agreement." (*Id.* at ¶ 15.) Defendant terminated the MTT Partner Service Agreement in writing around August 26, 2021, and plaintiff accepted that termination. (*Id.* at ¶ 16.)

Plaintiff alleges that defendant made statements regarding plaintiff on three online platforms in February 2022: LinkedIn, Slack, and GoFundMe. (*Id.* at ¶¶ 17–23.) First, on February 18, 2022, defendant posted the following statement on the LinkedIn website:

> I am an alumni and I need to share the real story of Prehired—a boot camp which sells aspiring SDRs [Sales Development Representatives] the dream of a career in tech sales, but often leaves them in debt, jobless and unable to break a $30,000 debt contract.
>
> PreHired founder Joshua Jordan [] is actively suing 290 graduates, many without jobs or making a fraction of what was promised, because of their inability or unwillingness to forfeit 12.5% of their wages for a prerecorded video series and predatory "mentorship" from people with little to no sales background.
>
> The worst part is they calculate your debt based on OTE [On-Target Earnings], not base. Imagine being a brand new SDR on your first day of sales at a startup, making a $35,000 base salary and immediately having to pay off debt based on $70,000. This is more than false advertising. It's systematic abuse of new SDRs and doesn't represent the values of the tech community.
>
> The bigger story here is how many reputable SaaS companies partner with PreHired. I don't blame these companies for hiring great people. They give a bad name to alternate education as a whole and do not represent the community helping aspiring SDRs break into SaaS. I believe the program started with good intentions but has since been completely consumed by greed. There is no longer a path

2

> to succeed at PreHired, only a path to succeed in spite of it, and it's time to stand up.
>
> The LinkedIn SaaS community has always rushed to the defense of SDRs being abused, mistreated and manipulated. PreHired is an example of this on an institutional level.
>
> I'm going to share more about my personal experience in the comments: the gaslighting, the false advertising and the ethical issues I witnessed, but more importantly, I want to use this post as a platform for YOU to share your unfiltered experience with PreHired. Please comment below. I know I am far from alone and it's time to come together and speak up.

(*Id.* at ¶ 17; *see also* Doc. No. 1-1 at 3, 6.) Defendant also posted the below statement on LinkedIn on February 18, 2022:

> Yesterday, I shared the story of PreHired and allowed dozens of other alumni to share theirs. Today, I wanted to share my story with you.
>
> I joined PreHired in October of 2020 excited at the prospect of becoming highly paid young adult in SaaS sales. I had background in political organization as well as some experience in tech building websites and designing logos.
>
> Their "six-week" bootcamp took me no more than 7–8 business days to fully complete before I moved into my career search process, which turned out to be a complete joke. Students at the time were required to submit 20+ applications a week almost aimlessly and send emails that were mostly ineffective. The training and feedback we received consisted of "submit more applications" and "send more emails[."]
>
> I interviewed for nearly three months and faced such extraordinary amounts of ableism during this process, I brought it to the attention of PreHired management. After telling them I had just spoken with a Director of Sales who suggested "Maybe don't mention your disability to the VP" all they had to say was "bad luck, keep interviewing[."]

(Doc. No. 1 at ¶ 18.) That same day (and presumably in response to a comment on a LinkedIn post), defendant additionally stated on LinkedIn, "Thank you, I fully agree with everything you've said. They're trying to ruin nearly 300 people's lives due to their own greed and the staff of Prehired has the power to stop it." (*Id.* at ¶ 19.) According to plaintiff, these LinkedIn posts and comments have been viewed more than 750,000 times. (*Id.* at ¶ 20.)

On February 18, 2022, on the online platform Slack, defendant stated that "the goal here is to get everyone released [from their contracts with plaintiff] by making sure PreHired goes

3

1  under," and on February 19, 2022, plaintiff also shared on Slack, "I'm creating an email template
2  to send to Josh Jordan on Monday asking for a contract withdrawal and we'll see what happens
3  from there.  Everyone under contract will need to send it.  I'll include his contact info." (*Id.* at
4  ¶¶ 21, 23.)

5  Finally, on February 21, 2022, defendant posted a statement on the GoFundMe website
6  saying, "Help People Scammed by PreHired Fight Back!" (*Id.* at ¶ 22.)

7  According to plaintiff, "[i]n the short period following [defendant's] statements, multiple
8  clients and potential clients have cancelled [sic] sales calls and meetings, canceled executed
9  contracts, and . . . decided not to complete pending and negotiated transactions" with plaintiff.
10 (*Id.* at ¶ 24.)  A "good number" of these clients and potential clients have "specifically cited and
11 referred to" the above-described statements by defendant as their reason for canceling their
12 business dealings with plaintiff.  (*Id.* at ¶ 25.)  Plaintiff asserts that as a direct result of
13 defendant's conduct and statements, plaintiff has suffered financial damages in excess of
14 $1,500,000.  (*Id.* at ¶ 27.)

15 On March 1, 2022, plaintiff filed its complaint initiating this action in this federal court
16 based on diversity jurisdiction pursuant to 28 U.S.C. § 1332(d).  (Doc. No. 1.)  Plaintiff brings
17 two state law claims against defendant:  (1) trade libel and (2) intentional interference with
18 business relationships.  (*Id.* at 7, 10.)

19 On April 12, 2022, defendant filed the pending motion to strike plaintiff's complaint
20 pursuant to California's anti-SLAPP statute.  (Doc. No. 28.)  On May 19, 2022, plaintiff filed its
21 opposition to the pending motion to strike.  (Doc. No. 49.)  Defendant filed a reply thereto on
22 May 25, 2022.  (Doc. No. 50.)

23 **LEGAL STANDARD**

24 **A.    Motion to Strike:  California's Anti-SLAPP Statute**

25 California's anti-SLAPP statute authorizes the pre-trial dismissal of "SLAPPs" ("Strategic
26 Lawsuits against Public Participation").  Cal. Civ. Proc. Code § 425.16; *Metabolife Int'l, Inc. v.*
27 *Wornick*, 264 F.3d 832, 839 (9th Cir. 2001).  The statute aims to identify, early in the litigation
28 process, "meritless first amendment cases aimed at chilling expression through costly, time-

4

consuming litigation." *Metabolife*, 264 F.3d at 839. The California legislature enacted § 425.16 to provide a remedy for the "disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." Cal. Civ. Proc. Code § 425.16(a); *see also Equilon Enters., LLC v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 59 (2002). SLAPP suits are civil lawsuits "aimed at preventing citizens from exercising their political rights or punishing those who have done so." *Simpson Strong-Tie Co. v. Gore*, 49 Cal. 4th 12, 21 (2010). Section 425.16(a) also directs that the statute shall be broadly construed. *Rohde v. Wolf*, 154 Cal. App. 4th 28, 35 (2007).

A defendant opposing a SLAPP claim may bring a special motion to strike any cause of action "arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue." Cal. Civ. Proc. Code § 425.16(b)(1). The so-called "anti-SLAPP" statute provides a means of quickly identifying and eliminating SLAPP actions through early dismissal. Because SLAPP suits seek to deplete "the defendant's energy" and drain "his or her resources," the legislature sought "to prevent SLAPPs by ending them early and without great cost to the SLAPP target." *Kibler v. N. Inyo Cnty. Local Hosp. Dist.*, 39 Cal. 4th 192, 197 (2006) (citations omitted). "Thus, in promulgating section 425.16, the California legislature provided that a 'special motion to strike may be brought early in the lawsuit and that discovery ordinarily may not proceed unless and until the court finds that the [plaintiff's] suit has a probability of success.'" *Aeroplate Corp. v. Arch Ins. Co.*, No. 1:06-cv-1099-AWI-SMS, 2006 WL 3257487, at *3 (E.D. Cal. Nov. 9, 2006) (quoting *Rogers v. Home Shopping Network, Inc.*, 57 F. Supp. 2d 973, 976 (C.D. Cal. 1999)).

"Special procedural rules apply where an anti-SLAPP motion is brought in federal court." *Bulletin Displays, LLC v. Regency Outdoor Advert., Inc.*, 448 F. Supp. 2d 1172, 1180 (C.D. Cal. 2006); *see also Hopscotch Adoptions, Inc. v. Kachadurian*, No. 1:09-cv-2101-LJO-MJS, 2011 WL 587357, at *3 (E.D. Cal. Feb. 9, 2011). Federal courts must apply federal standards when considering motions brought pursuant to § 425.16. *Rogers*, 57 F. Supp. 2d at 982. "If a defendant makes a special motion to strike based on alleged deficiencies in the plaintiff's

/////

complaint, the motion must be treated in the same manner as a motion under Rule 12(b)(6) except that the attorney's fee provision of § 425.16(c) applies." *Id.* at 983.

Although a § 425.16 special motion to strike does not apply to federal claims presented in a federal court proceeding, *see Bulletin Displays*, 448 F. Supp. 2d at 1182, the anti-SLAPP statute does apply to "state law claims that federal courts hear pursuant to their diversity jurisdiction." *Hilton v. Hallmark Cards*, 599 F.3d 894, 900 (9th Cir. 2010).

A court considering a motion to strike under California's anti-SLAPP statute must engage in a two-part inquiry. First, a defendant must make an initial *prima facie* showing that the plaintiff's suit arises from activity protected by the anti-SLAPP statute. Cal. Civ. Proc. Code § 425.16 (b)(1). In determining whether the defendant has made this required showing, the California Supreme Court has stressed that "the critical point is whether the plaintiff's cause of action itself was based on an act in furtherance of the defendant's right of petition or free speech." *City of Cotati v. Cashman*, 29 Cal. 4th 69, 78 (2002). Second, "[i]f the defendant is able to make this threshold showing, the burden shifts to the plaintiff to demonstrate a probability of prevailing on the challenged claims." *Sanchez v. Law Office of Armo*, No. 1:20-cv-00163-NONE-SKO, 2021 WL 1214559, at *13 (E.D. Cal. Mar. 31, 2021) (citing *Brill Media Co. v. TCW Grp., Inc.*, 132 Cal. App. 4th 324, 328 (2005)), *adopted by* 2021 WL 2292779 (E.D. Cal. June 4, 2021). Accordingly, a plaintiff must show that the claim "is both legally sufficient and supported by a sufficient *prima facie* showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Jarrow Formulas, Inc. v. LaMarche*, 31 Cal. 4th 728, 746 (2003). Claims as to which a plaintiff is able to satisfy this burden are "not subject to being stricken as a SLAPP." *Id.*; *see also Roderick v. Weissman*, No. 1:11-cv-02093-LJO-DLB, 2012 WL 639463, at *2 (E.D. Cal. Feb. 24, 2012).

## ANALYSIS

In his motion to strike, defendant argues first that this action arises from an activity protected by the anti-SLAPP statute, and second, that plaintiff cannot meet its burden of demonstrating a probability of prevailing on its claims. (Doc. No. 28 at 2–3.) In opposition,

/////

plaintiff disputes that the anti-SLAPP statute is applicable to its claims.[2] (Doc. No. 49 at 5.) The court will first consider whether the anti-SLAPP statute is applicable to this action.

**A.     Whether the Anti-SLAPP Statute is Applicable to this Action**

In his motion to strike, defendant characterizes this lawsuit as an "effort by [plaintiff] to stifle dissent" and to "bully [defendant] into silence." (Doc. No. 28 at 11.) Defendant contends that this lawsuit arises from his exercise of his free speech rights under the United States Constitution and thus falls within the protection of the anti-SLAPP statute. (*Id.* at 12.) In

---

[2] In its opposition to the pending motion, plaintiff acknowledges Ninth Circuit precedent explaining that "when an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated." (Doc. No. 49 at 8) (quoting *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (2018)). Nonetheless, plaintiff appears to advance the creative, and ultimately unpersuasive, argument that anti-SLAPP motions are inherently incompatible with the application of the 12(b)(6) standard, because Rule 12(b)(6) "requires the Court to accept the pleadings of the Plaintiff as true and provide every possible inference to the Plaintiff," whereas the two-part anti-SLAPP inquiry requires a showing of plaintiff's probability of prevailing on the challenged claims. (Doc. No. 49 at 9.) Because "[t]he relevant inquiry for a Rule 12(b)(6) motion is not whether the plaintiff has demonstrated a likelihood of success on the merits," plaintiff argues that "[d]efendant cannot meet the second initial prong for the [anti-SLAPP] motion which is that he must prove that the Plaintiff cannot succeed on its claim." (*Id.*) Putting aside plaintiff's misapprehension of the two-part inquiry applicable to anti-SLAPP motions—it is plaintiff's burden, not defendant's burden, to demonstrate a probability of prevailing on the challenged claims—plaintiff's argument in this regard does not provide any basis for the court to depart from settled Ninth Circuit precedent that consistently applies the Rule 12(b)(6) standard when considering anti-SLAPP motions to strike based on alleged deficiencies in the operative complaint, notwithstanding the two-part inquiry applicable to anti-SLAPP motions. *See Planned Parenthood Fed'n of Am.*, 890 F.3d at 834; *Sanchez*, 2021 WL 1214559, at *13; *Rogers*, 57 F. Supp. 2d at 983. Plaintiff also appears to argue, in the alternative, that there are "factual issues" present in this action, and accordingly, the court should apply the Rule 56 standard in considering defendant's motion to strike and allow the parties to engage in discovery before deciding the pending motion. (Doc. No. 49 at 8–10) (quoting *Planned Parenthood Fed'n of Am.*, 890 F.3d at 834) ("[W]hen an anti-SLAPP motion to strike challenges the factual sufficiency of a claim, then the Federal Rule of Civil Procedure 56 standard will apply. But in such a case, discovery must be allowed . . . before any decision is made by the court.") However, defendant's pending motion to strike challenges the *legal* sufficiency of plaintiff's claims, rather than the sufficiency of plaintiff's *factual* allegations in support of those claims. (*See* Doc. No. 28 at 20, 26) (arguing that plaintiff cannot show a probability of prevailing on the merits of its claims as pled); *see also Nunes v. Meredith*, No. 1:21-cv-00078-JLT-BAM, 2022 WL 2214205, at *7 (E.D. Cal. June 21, 2022) (applying the Rule 12(b)(6) standard to an anti-SLAPP motion in which the defendant argued that the plaintiff lacked a probability of prevailing on the merits because the claims as pled were legally insufficient). The Rule 56 standard is thus inapplicable to the court's consideration of the pending motion.

opposition, plaintiff argues that the anti-SLAPP statute is not applicable here because defendant is a commercial competitor acting in restraint of trade. (Doc. No. 49 at 5.) Specifically, plaintiff argues that defendant is "a competitor" of plaintiff, and in making statements about plaintiff, he was "importuning [plaintiff's] clients to come join his new company." (*Id.* at 6.)

### 1.   Whether the Commercial Speech Exemption is Applicable to this Action

Pursuant to California Civil Procedure Code § 425.17(c), the anti-SLAPP statute

> does not apply to any cause of action brought against a person primarily engaged in the business of selling or leasing goods or services, . . . arising from any statement or conduct by that person if both of the following conditions exist: (1) The statement or conduct consists of representations of fact about that person's or a business competitor's business operations, goods, or services, *that is made for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, the person's goods or services*, . . . [and] (2) The intended audience is an actual or potential buyer or customer, or a person likely to repeat the statement to, or otherwise influence, an actual or potential buyer or customer . . . .

Cal. Civ. Proc. Code § 425.17(c) (emphasis added). This exemption, which courts have referred to as the "commercial speech exemption" to the anti-SLAPP statute, "confirms the Legislature's intent to except from anti-SLAPP coverage disputes that are *purely commercial*." *TYR Sport Inc. v. Warnaco Swimwear Inc.*, 679 F. Supp. 2d 1120, 1142 (C.D. Cal. 2009) (quoting *Taheri Law Grp. v. Evans*, 160 Cal. App. 4th 482, 491 (2008)) (emphasis added). As a result, this exemption is to be "narrowly construed." *Hu & Assocs., LLC v. New Life Senior Wellness Ctr., LLC*, No. 2:16-cv-03078-JAK-MRW, 2017 WL 10591754, at *10 (C.D. Cal. July 7, 2017) (citing *Simpson Strong-Tie*, 49 Cal. 4th at 22. "The burden of proof as to the applicability of the commercial speech exemption, therefore, falls on the party seeking the benefit of it—i.e., the plaintiff." *Id.* The applicability of the commercial speech exemption is a "threshold issue" to be addressed "prior to examining the applicability of [§] 425.16." *Xu v. Huang*, 73 Cal. App. 5th 802, 813 (2021).

Notably, here, as alleged by plaintiff, defendant did not mention his own company or otherwise promote himself or any other company in his statements posted on LinkedIn, Slack, or GoFundMe. (*See* Doc. No. 1 at ¶¶ 17–23.) Indeed, plaintiff's complaint is devoid as to any allegations concerning what defendant's company—MTT Training, LLC—even does, whether it

8

1  remained in operation following the termination of its relationship with plaintiff, or what type of
2  clients, if any, defendant or his company seek to engage.  Moreover, the only authority that
3  plaintiff cites in support of its contention in this regard is a district court's decision in a case that
4  pertained to statements made by one company suggesting that a second company's products had
5  infringed upon its patents, all within the context of acquisition negotiations between the second
6  company and a third company.  (Doc. No. 49 at 5–6) (citing *Globetrotter Software, Inc. v. Elan*
7  *Computer Grp., Inc.*, 63 F. Supp. 2d 1127, 1130 (N.D. Cal. 1999) (declining to apply the anti-
8  SLAPP statute to claims arising out of statements made by a competitor company that were not
9  "made during or in connection with an official proceeding, . . . . [or] made in a place open to the
10 public or a public forum in connection with an issue of public interest."); *see also Globetrotter*
11 *Software, Inc. v. Elan Computer Grp., Inc.*, 362 F.3d 1367, 1369–70 (Fed. Cir. 2004) (providing
12 factual background).  Here, by contrast, and as alleged by plaintiff, defendant's online statements
13 repeatedly referenced plaintiff's founder "actively suing 290 graduates [of Prehired]," plaintiff's
14 potentially predatory practices aimed toward members of the public, and defendant organizing to
15 protect members of the public from such alleged predatory practices.  (*See* Doc. No. 1 at ¶¶ 17,
16 19, 21–22) (stating that "[Prehired is] trying to ruin nearly 300 people's lives due to their own
17 greed," describing plaintiff's clients as having been "scammed," and stating a "goal" of "get[ting]
18 everyone released" from their contracts with plaintiff).  While the court does not infer the truth of
19 these statements, on plaintiff's own allegations, there is no basis for the court to conclude that
20 defendant's alleged conduct merely concerns the "statements of one company regarding the
21 conduct of a competitor company" or that defendant's statements were made "for the purpose of
22 obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in,
23 [defendant's] goods or services."  *Globetrotter Software*, 63 F. Supp. 2d at 1130; Cal. Civ. Proc.
24 Code § 425.17(c)(1).
25     The court thus finds that defendant's alleged affiliation with the entity MTT Training,
26 LLC nearly six months before making the statements at issue in this action does not, without
27 more, bar the anti-SLAPP statute from applying to plaintiff's claims asserted in this action.  *See*
28 *Hu and Assocs.*, 2017 WL 10591754, at *12–13 (commercial speech exemption to anti-SLAPP

statute did not apply where, although the parties were business competitors, defendants' online comments discouraging investors from working with plaintiffs were not made for the purpose of promoting defendants' goods or services); *Troy Grp., Inc. v. Tilson*, 364 F. Supp. 2d 1149, 1151, 1153–54 (C.D. Cal. 2005) (finding that a statement made by an industry-member defendant calling plaintiff "the biggest crook[] on the planet" was made in defendant's capacity as an industry investor, not as a competitor, and thus did not bar application of anti-SLAPP statute); *Balla v. Hall*, 59 Cal. App. 5th 652, 674–75 (2021) (noting that so long as a defendant's motive in making a statement was not "*solely* financial," a statement made for the purpose of furthering a business interest may be protected by anti-SLAPP statute) (emphasis added).

2. Whether Defendants' Alleged Statements Arise from Protected Activity

The court next considers whether plaintiff's claims arise from "act[s] in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue," as is required for them to be subject to an anti-SLAPP motion to strike. Cal. Civ. Proc. Code § 425.16(b)(1), (e). Such acts include:

> (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

*Id.* § 425(e). Defendant argues that the statements at issue in this action fall under each of these subcategories of speech that trigger the protection of the anti-SLAPP statute. (Doc. No. 28 at 12.) In its opposition, plaintiff does not address these arguments, instead apparently resting on its contention that this action falls within the commercial speech exemption of the anti-SLAPP statute. (*See* Doc. No. 49 at 5–6.)

The court concludes that the alleged statements at issue in this action—written content shared through the internet platforms of LinkedIn, Slack, and GoFundMe—constitute statements made in a "public forum in connection with an issue of public interest" for the purposes of § 425.16. First, as noted by defendant, "[t]he law is settled that statements posted on internet sites

10

are posted in a public forum within the meaning of [§ 425.16(e)(3)]." (Doc. No. 28 at 15); *see Barrett v. Rosenthal*, 40 Cal. 4th 33, 42 n.4 (2006) ("Web sites accessible to the public . . . are 'public forums' for purposes of the anti-SLAPP statute."); *Laub v. Horbaczewski*, No. 2:17-cv-06210-JAK-KS, 2019 WL 3492402, at *13 (C.D. Cal. July 30, 2019) (content posted on the website Wikipedia constitutes written statements made in a public forum); *Summit Bank v. Rogers*, 206 Cal. App. 4th 669, 693 (2012) ("Without doubt, Internet message boards are places 'open to the public or a public forum' for purposes of section 425.16."); *Balla*, 59 Cal. App. 5th at 673 (posts shared on social media website Facebook were made in a public forum for anti-SLAPP purposes); *Jackson v. Mayweather*, 10 Cal. App. 5th 1240, 1252 (2017) ("[Defendant's] postings on his Facebook page and Instagram account . . . were all made in 'a place open to the public or a public forum' within the meaning of [§ 425.16(e)(3)].").

With respect to § 425.16(e)(3)'s requirement that protected statements be made "in connection with an issue of public interest," "the term 'issue of public interest' is construed broadly in the anti-SLAPP context." *Critical Care Diagnostics, Inc. v. Am. Ass'n for Clinical Chemistry, Inc.*, No. 3:13-cv-01308-L-MDD, 2014 WL 634206, at *3 (S.D. Cal. Feb. 18, 2014). "The issue does not need to be 'significant' to be covered by the anti-SLAPP statute." *Id.* Rather, "[a] public issue includes 'conduct that could directly affect a large number of people beyond the direct participants' and a 'topic of widespread, public interest.'" *Balla*, 59 Cal. App. 5th at 673 (citation omitted). "California law does not require a statement to be serious or truthful in order to concern an issue of public interest." *Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*, 946 F. Supp. 2d 957, 969 (N.D. Cal. 2013).

Here, defendant contends that his statements concerned "the role of for-profit vocational schools and the battle to curb abuses of their enrolled students." (Doc. No. 28 at 16.) He argues that his statements sought to "warn[] potential students to understand that PreHired would not train them to be qualified for employment, and that they would be left deeply in debt and without jobs after graduation" as well as warn these prospective students of plaintiff's "false advertisements, manipulative and deceptive recruitment practices, and benefits that never materialized." (Doc. No. 28 at 19.) Indeed, plaintiff alleges that defendant's LinkedIn posts

11

describe plaintiff engaging in "false advertising," "systematic abuse" of students, "predatory 'mentorship' from people with little to no sales background," and "ethical issues." (Doc. No. 1 at ¶¶ 17–18.) Regardless of the truth of defendant's online statements, these warnings to the public regarding plaintiff's potentially unethical alleged business practices plainly implicate the public's interest. *See Piping Rock Partners*, 946 F. Supp. 2d at 969 (finding that online blog post "warning . . . consumers not to do business with plaintiffs because of their allegedly faulty business practices" concerns an issue of public interest, and "[i]t makes no difference, for purposes of the public interest requirement, that the warning was not sincere, accurate, or truthful"); *Chaker v. Mateo*, 209 Cal. App. 4th 1138, 1146 (2012) (concluding that challenged online statements regarding plaintiff's character and business practices were "of public interest" because they "fall within the rubric of consumer information about [plaintiff's] . . . business and were intended to serve as a warning to consumers about his trustworthiness."). Moreover, plaintiff's allegation that defendant's LinkedIn statements "have been viewed more than 750,000 times on LinkedIn" support a finding that these statements pertain to an issue of public interest. *See Summit Bank*, 206 Cal. App. 4th at 695 ("The fact that [defendant's] posts drew numerous comments, including comments vehemently disagreeing with [defendant], suggests that the broad topic [of the statement], and the narrow topic of [plaintiff] and its personnel and activities, are matters of public discourse and are of considerable public interest.").

The court notes, however, that not all of defendant's alleged statements appear to be warnings directed at prospective students. As alleged by plaintiff, at least some of defendant's statements appear to have been directed toward either organizing past Prehired clients for the purpose of renegotiating their agreements with Prehired or rallying the public for support in "fight[ing] back" against Prehired. (*See* Doc. No. 1 at ¶¶ 21–23) ("[T]he goal here is to get everyone released [from their contracts with plaintiff] . . . . Help People Scammed by PreHired Fight Back!"). In this regard, these statements also pertain to issues of the public interest, namely, plaintiff's "allegedly faulty business practices" with respect to providing educational services to the members of the public and the subsequent onerous debt burdens faced by members of the public who have contracted to receive such educational services from plaintiff. *See Piping*

*Rock Partners*, 946 F. Supp. 2d at 969; *Critical Care Diagnostics*, 2014 WL 634206, at *5 (finding that statements which were "not directed to the general public but to a small, definable portion of the population" were nonetheless made in connection with an issue of public interest because they "occurred in the context of an ongoing controversy . . . in an issue of public significance"); *see also Chaker*, 209 Cal. App. 4th at 1145 (noting that "the public interest may extend to statements about conduct between private individuals"); *Summit Bank*, 206 Cal. App. 4th at 695 (describing the "exceedingly expansive interpretation of the phrase 'issue of public interest' and . . . the [anti-SLAPP] statute's mandate that we construe the law broadly so as to 'encourage continued participation in matters of public significance'") (quoting Cal. Civ. Proc. Code § 425.16(a)).  The court therefore finds that all of defendant's alleged statements were made "in connection with an issue of public interest" within the meaning of § 425.16(e)(3).

The court concludes that defendant has made a *prima facie* showing that his alleged statements were made in a public forum in connection with an issue of public interest, and accordingly, that plaintiff's suit "arises from an act in furtherance of the [defendants'] rights of petition or free speech." *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 595 (9th Cir. 2010) (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1110 (9th Cir. 2003)).[3]

**B.     Whether Plaintiff has Demonstrated a Probability of Prevailing on the Merits**

Because defendant has made a *prima facie* showing that this action arises from activity protected by the anti-SLAPP statute, "the burden shifts to the plaintiff to demonstrate a probability of prevailing on the challenged claims." *Id.*; *see also Sanchez*, 2021 WL 1214559, at *13.  In order to satisfy this burden, "the plaintiff must demonstrate that the complaint is legally sufficient and supported by a *prima facie* showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Planned Parenthood Fed'n of Am.*, 890 F.3d at 833 (citing *Metabolife*, 264 F.3d at 840).  If a plaintiff cannot meet this burden, "the claim is

---

[3] Because the court concludes that the statements at issue in this action fall within the parameters of § 425.16(e)(3), the court need not address defendant's arguments that his statements are also subject to the protection of the anti-SLAPP statute pursuant to § 425.16(e)(2) and § 425.16(e)(4). Similarly, the court need not consider the several exhibits submitted by defendant in support of the pending motion.  (*See* Doc. Nos. 34–46.)

stricken pursuant to the statute." *Jordan-Benel v. Universal City Studios, Inc.*, 859 F.3d 1184, 1188–89 (9th Cir. 2017).

As described above, plaintiff asserts causes of action for trade libel and intentional interference with business relationships. (Doc. No. 1 at 7, 10.) "Trade libel is the intentional disparagement of the quality of the property that results in pecuniary damage to the plaintiff." *Piping Rock Partners*, 946 F. Supp. 2d at 981. "'Disparagement' consists of 'injurious falsehoods that interfere with business,' and unlike the tort of defamation, is 'not directed at the plaintiff's personal reputation, but rather at the goods a plaintiff sells or the character of his other business.'" *Hellenic Petroleum, LLC v. Sacramento Energy Res., LLC*, No. 1:19-cv-00491-AWI-SAB, 2019 WL 4747794, at *3 (E.D. Cal. Sept. 30, 2019) (quoting *Aetna Cas. & Sur. Co. v. Centennial Ins. Co.*, 838 F.2d 346, 351 (9th Cir. 1988)). In order to prevail on a claim for trade libel, a plaintiff must plead and prove: "(1) a statement that (2) was false, (3) disparaging, (4) published to others in writing, (5) induced others not to deal with it, and (6) caused special damages." *Franklin Fueling Sys., Inc. v. Veeder-Root Co.*, No. 09-cv-00580-FCD-JFM, 2009 WL 2462505, at *5 (E.D. Cal. Aug. 11, 2009). "To be actionable, the defamatory statement must be a false statement of fact; statements of opinion alone will not support a cause of action for trade libel." *Piping Rock Partners*, 946 F. Supp. 2d at 981. Similarly, "[s]tatements that consist of merely loose, figurative, or hyperbolic language, as well as statements that are mere puffery or the expression of opinion, will not constitute 'disparagement.'" *Hellenic Petroleum*, 2019 WL 4747794, at *3.

Under California law, the elements of an intentional inference with business relationships claim, which is sometimes referred to as an intentional interference with prospective economic advantage claim, are as follows:

> (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant.

*Stryker Sales Corp. v. Zimmer Biomet, Inc.*, 231 F. Supp. 3d 606, 617 (E.D. Cal. 2017). With

14

respect to the third element, "a plaintiff must plead that the defendant engaged in an act that is wrongful apart from the interference itself." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1154 (2003). "An act is not independently wrongful merely because defendant acted with an improper motive." *Id.* at 1158. Rather, "an act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Id.* at 1159; *see also Contemporary Servs. Corp. v. Staff Pro Inc.*, 152 Cal. App. 4th 1043, 1060 (2007) ("In order to prove intentional or negligent interference with prospective economic advantage, plaintiffs must show defendants engaged in conduct that was wrongful by some legal measure other than the fact of the interference itself.").

Here, because the same conduct is alleged as the basis for plaintiff's trade libel and intentional interference with business relationships claims, if plaintiff fails to show a probability of succeeding on its trade libel claim, plaintiff likewise fails to show that defendant's conduct was wrongful, and consequently, fails to show a probability of success on its intentional inference with business relationship claim. (*See* Doc. No. 1 at ¶ 43) ("[Defendant] has . . . induced plaintiff's . . . potential clients to terminate their contracts and business relationships with the plaintiff"); *see also Rumble, Inc. v. Daily Mail and Gen. Tr. PLC*, 459 F. Supp. 3d 1294, 1301 (C.D. Cal. 2020) ("[T]he success of this [intentional interference with prospective business advantage] claim rises and falls with [plaintiff's] trade libel claim.").

Notably, plaintiff does not advance any arguments in its opposition regarding its probability of prevailing on either of its claims, nor does it respond at all to defendant's extensive arguments in the pending motion concerning plaintiff's inability to prevail on its claims. (*See* Doc. Nos. 28 at 20–30; 50 at 6–9.) The closest plaintiff comes to mounting such an argument is its assertion that "[o]ne of the elements of trade libel is that the Plaintiff must have suffered actual damage from the acts of the Defendant," and an entity named New Epona (which is nowhere mentioned in plaintiff's complaint) canceled its contract with plaintiff "because of [defendant's] statements." (Doc. No. 49 at 11.) Contrary to plaintiff's assertion that this lone allegation "is sufficient to survive a Rule 12(b)(6) analysis and consequently the Plaintiff has satisfied the elements of a trade libel claim," plaintiff may not demonstrate its probability of success on its

1    trade libel claim by simply asserting that it will be able to satisfy *one* of the elements of that
2    claim.  (*See id.* at 11–12.)  Moreover, "[t]he tort of interference with prospective economic
3    advantage only applies to 'interference with *existing noncontractual* relations which hold the
4    promise of future economic advantage,'" whereas plaintiff here contends that defendant's
5    statements caused the cancelation of an existing *contractual* relationship between plaintiff and a
6    third party.  *Jones v. Hollywood Unlocked, Inc.*, No. 2:21-cv-07929-MEMF-PVC, 2022 WL
7    18674459, at *9 (C.D. Cal. Nov. 22, 2022) (quoting *Westside Ctr. Assocs. v. Safeway Stores 23,*
8    *Inc.*, 42 Cal. App. 4th 507, 524 (1996)) (emphasis added).

9         Similarly, plaintiff's conclusory assertions in the complaint—such as alleging that the
10   language contained in defendant's LinkedIn posts "contained defamatory meanings as opposed to
11   innocent ones" and that defendant "made his statements with malice or oppression"—are
12   insufficient to satisfy plaintiff's burden of demonstrating a "probability of prevailing" on its trade
13   libel claim.  (*See* Doc. No. 1 at ¶¶ 32, 34); *Mindys Cosmetics*, 611 F.3d at 595; *see also*
14   *LoMonaco v. Soberlink, Inc.*, No. 8:15-cv-00015-JLS-RNB, 2015 WL 13917204, at *7 (C.D. Cal.
15   Aug. 25, 2015) (finding that counter-claimant has made "no showing of a probability that it
16   would prevail on its trade libel counter-claim" where "[a]t best, [the] counter-claim for trade libel
17   contains a vague assertion that '[counter-claimant] has been injured and damaged by the false
18   assertions of fact'").

19        Finally, because plaintiff has failed to carry its burden of demonstrating a probability of
20   prevailing on its trade libel claim, plaintiff has likewise failed to demonstrate a probability of
21   prevailing on its intentional interference with business relationships claim.  *See Contemporary*
22   *Servs.*, 152 Cal. App. 4th at 1060 (finding that plaintiffs necessarily failed to demonstrate a
23   probability of establishing the wrongfulness element of intentional interference with prospective
24   advantage claim because the allegations underpinning that claim and plaintiffs' other claims were
25   the same and plaintiff failed to demonstrate a probability of prevailing on plaintiff's other
26   claims); *see also Rumble*, 459 F. Supp. 3d at 1301 (dismissing a claim for intentional interference
27   with prospective business advantage because plaintiff "failed to state a claim for trade libel");
28   *USANA Health Scis., Inc. v. Minkow*, No. 2:07-cv-00159-TC, 2008 WL 619287, at *7 (D. Utah

1  Mar. 4, 2008) (noting that "[u]nder California law, a plaintiff must show defendants engaged in
2  conduct that was wrongful by some legal measure other than the fact of the interference itself"
3  and striking an intentional interference claim because plaintiff "submitted no evidence of
4  Defendants' wrongful conduct").

5  Because plaintiff has not established a probability of prevailing on its trade libel or
6  intentional interference with business relationships claims, these claims will be stricken by the
7  court pursuant to California's anti-SLAPP statute.

**C.     Leave to Amend**

Plaintiff does not request leave to amend its complaint in the event that the court grants defendant's motion to strike. Nonetheless, the Ninth Circuit has held that "granting a defendant's anti-SLAPP motion to strike a plaintiff's initial complaint without granting the plaintiff leave to amend would directly collide with Fed. R. Civ. P. 15(a)'s policy favoring liberal amendment." *Verizon Del., Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004). Therefore, although it appears unlikely that plaintiffs will be able to cure the deficiencies described in this order in any amended complaint it may elect to file, the court will nonetheless grant plaintiff leave to amend its complaint. *See Shahid Buttar for Congress Comm. v. Hearst Commc'ns, Inc.*, No. 3:21-cv-05566-EMC, 2022 WL 1215307, at *12 (N.D. Cal. Apr. 25, 2022) (granting plaintiffs leave to amend "although it appears unlikely" that plaintiffs will be able to cure the deficiencies in their complaint, "in light of the Ninth Circuit's holding that a Plaintiff in federal court be granted leave to amend their initial complaint before it is dismissed with prejudice under a state law anti-SLAPP statute"); *Sanchez*, 2021 WL 1214559, at *17–18 (noting that defendants' anti-SLAPP motion "is being considered in federal court, and . . . the Ninth Circuit requires that Plaintiff be given an opportunity to amend her complaint"). The parties are reminded that "[i]f the offending claims remain in the first amended complaint, the anti-SLAPP remedies remain available to defendant[]." *Verizon Del.*, 377 F.3d at 1091.

/////
/////
/////

17

**CONCLUSION**

For the reasons explained above,

1. Defendant's motion to strike plaintiff's complaint (Doc. No. 28) is granted;

2. Plaintiff's complaint is dismissed, with leave to amend;

3. Plaintiff shall file its first amended complaint, or alternatively, a notice of its intent to not file a first amended complaint, within fourteen (14) days from the date of entry of this order; and

4. Plaintiff is warned that its failure to comply with this order may result in dismissal of this action due to plaintiff's failure to prosecute.

IT IS SO ORDERED.

Dated: **March 29, 2023**

UNITED STATES DISTRICT JUDGE